Mass. Assoc. of Ind. Ins. Agents and Brokers, Inc. *v.* Commr. of Ins.

Massachusetts Association of Independent Insurance
Agents and Brokers, Inc.,[1] & others[2] *vs.* Commissioner
of Insurance.

Suffolk.    November 3, 1976. — September 9, 1977.

Present: Quirico, Braucher, Wilkins, & Liacos, JJ.

*Practice, Civil,* Declaratory proceeding, Parties.    *Jurisdiction,* Declaratory relief.    *Commissioner of Insurance.    Insurance,* Group marketing plan.    *Words,* "Real party in interest."

Allegations in a declaratory proceeding against the Commissioner of Insurance by a trade association of licensed insurance agents and brokers in their individual capacities, setting forth a dispute over the defendant's interpretation of G. L. c. 175, § 193R, and the validity of a regulation issued by him pursuant to such interpretation, and claiming injury to the plaintiffs in the conduct of their business and loss of customers due to unfair competition contrary to legislative policy, established both an "actual controversy" under c. 231A, § 1, and standing of the plaintiffs to secure resolution of the dispute. [292-296]

A trade association incorporated under G. L. c. 180, with a membership of many licensed insurance agents and brokers, and authorized by statute to sue and be sued, should be recognized as the "real party in interest" under Mass. R. Civ. P. 17 (a), 365 Mass. 763 (1974), and entitled to bring a proceeding on behalf of its unnamed members for a declaratory judgment respecting a regulation issued by the Commissioner of Insurance. [296-298]

Civil action commenced in the Supreme Judicial Court for the county of Suffolk on November 20, 1974.

The case was heard by *Hennessey,* C.J., on a motion to dismiss.

*Richard R. Eurich* for the plaintiffs.

---

[1] Massachusetts Association of Independent Insurance Agents and Brokers, Inc. (MAIIAB), is a trade association incorporated under G. L. c. 180 with a membership of approximately 3,500 licensed insurance agents and brokers in the Commonwealth.

[2] John W. Barrett Insurance Agency, Inc., H & K Insurance Agency Inc., and Columbia Insurance Agency, Inc.

*Terence P. O'Malley*, Assistant Attorney General, for the defendant.

LIACOS, J.   This is an appeal from an order of a single justice dismissing the plaintiffs' complaint under G. L. c. 231A seeking to challenge the validity of Regulation 3-74, entitled "Rules and Regulations Regarding Insurance Issued Pursuant to a Group Marketing Plan," issued on October 31, 1974, by the Commissioner of Insurance (commissioner). The regulation in question, purporting to implement the provisions of G. L. c. 175, § 193R, inserted by St. 1973, c. 1098, sets forth the criteria for so called group marketing plans. The statute on its face[3] concerns not only such plans but also "mass merchandising" plans.[4]

The plaintiffs allege that the regulation is invalid and in contravention of the express provisions and intent of the statute. Their position is that G. L. c. 175, § 193R, requires the commissioner to make reasonable rules and regulations regarding insurance issued pursuant to both group marketing plans and mass merchandising plans, and that any narrowing by regulation of the limitations of the statute to group marketing would lead to unfair competition. The commissioner's position, as reflected in Regulation 3-74, is to the contrary.[5]

---

[3] General Laws c. 175, § 193R, defines the terms relevant here as follows: " 'Group marketing', 'Group marketing plan', 'Mass merchandising', or 'Mass merchandising plan', any system, design or plan whereby motor vehicle or homeowner insurance is afforded to employees of an employer, or to members of a trade union, association, or organization and to which the employer, trade union, association or organization has agreed to or in any way affiliated itself with, assisted, encouraged or participated in the sale of such insurance to its employees or members through a payroll deduction plan or otherwise."

[4] Mass merchandising is a technique for bringing lower insurance costs to persons affiliated in certain groups based on savings flowing from the direct selling technique used. A group marketing approach seeks to further the possible savings by allowing the rates for the group to be based on its own experience.

[5] Regulation 3-74, § 3, entitled "Applicability and Scope," provides as to the regulation: "It shall *not* apply to . . . insurance issued pursuant to any 'mass merchandising plan' . . . ." See also § 4, Reg. 3-74.

The plaintiffs alleged in their complaint[6] that insurers were offering, and that the commissioner had approved, mass merchandising plans at lower rates than were available to individuals, which plans were not in conformity with G. L. c. 175, § 193R. They also alleged that they were participants in a heavily regulated industry with the purpose of the regulatory scheme being to protect those in the plaintiffs' position from the unfair and illegal competition being offered by the unregulated mass merchandising programs. They claimed that they were being injured in the conduct of their business and were suffering substantial losses of customers. The commissioner filed a motion to dismiss the amended complaint based on the grounds of lack of actual controversy and requisite standing by the plaintiffs. The single justice dismissed the complaint.

1. In order for a court to entertain a petition for declaratory relief, an "actual controversy" sufficient to withstand a motion to dismiss must appear on the pleadings. G. L. c. 231A, § 1. Even if there is an actual controversy, the particular plaintiff must demonstrate the requisite legal standing to secure its resolution. *Hillman* v. *Second Bank-State St. Trust Co.*, 338 Mass. 15, 19 (1958). The question whether an actual controversy exists is closely related to the issue of standing. *South Shore Nat'l Bank* v. *Board of Bank Incorporation*, 351 Mass. 363, 366-367 (1966).

The purpose of both the actual controversy and the standing requirements is to ensure the effectuation of the statutory purpose of G. L. c. 231A, which is to enable a court "to afford relief from ... uncertainty and insecurity with respect to rights, duties, status and other legal relations." G. L. c. 231A, § 9, inserted by St. 1945, c. 582, § 1. Such proceedings are concerned with the resolution of real, not hypothetical, controversies; the declaration issued is intended to have an immediate impact on the rights of the parties. *Employers' Commercial Union Ins. Co.* v. *Com-*

---

[6] The complaint referred to is the amended complaint filed by leave after a single justice allowed a motion to dismiss the original complaint.

*missioner of Ins.*, 362 Mass. 34, 38 (1972). *Travelers Ins. Co.* v. *Graye*, 358 Mass. 238, 240 (1970).

Although the "actual controversy" and standing requirements should be liberally construed in accord with the provisions of G. L. c. 231A, § 9, there are limits to the matters which can be heard in an action for a declaratory judgment. *Southbridge* v. *Southbridge Water Supply Co.*, 371 Mass. 209, 213-215 (1976).

In the sense that the matter at issue here involves a dispute over an official interpretation of a statute and the validity of a regulation promulgated pursuant to that interpretation, a justiciable controversy exists. *Woods* v. *Newton*, 349 Mass. 373, 376 (1965). *School Comm. of Cambridge* v. *Superintendent of Schools*, 320 Mass. 516 (1946). G. L. c. 231A, § 2. However, controversy in the abstract is not sufficient to allow a plaintiff to invoke the declaratory judgment remedy. *Supreme Council of the Royal Arcanum* v. *State Tax Comm'n*, 358 Mass. 111 (1970). The plaintiff must also be one who, by virtue of a legally cognizable injury, is a person entitled to initiate judicial resolution of the controversy. See K.C. Davis, Administrative Law § 22.04, at 427 (1972).

A party has standing when it can allege an injury within the area of concern of the statute or regulatory scheme under which the injurious action has occurred. *Circle Lounge & Grille, Inc.* v. *Board of Appeal of Boston*, 324 Mass. 427 (1949). *Westland Hous. Corp.* v. *Commissioner of Ins.*, 352 Mass. 374 (1967). *Massachusetts Soc'y of Optometrists* v. *Waddick*, 340 Mass. 581 (1960).

Normally, an injury derived from business competition is not sufficient to confer standing. *Nantucket Boat Inc.* v. *Woods Hole, Martha's Vineyard & Nantucket S.S. Auth.*, 345 Mass. 551 (1963). *Circle Lounge & Grille, Inc.* v. *Board of Appeal of Boston, supra.* "This rule does not apply, however, to competitors in a regulated industry ... who are attempting to challenge governmental action threatening their competitive position." *Everett Town Taxi, Inc.* v. *Aldermen of Everett*, 366 Mass. 534, 538 (1974). *SDK Medical Computer Servs. Corp.* v. *Profes-*

*sional Operating Management Group, Inc.,* 371 Mass. 117,
124 & n.11 & n.12 (1976). *South Shore Nat'l Bank* v.
*Board of Bank Incorporation, supra. Bay State Harness
Horse Racing & Breeding Ass'n* v. *State Racing Comm'n,*
342 Mass. 694, 702 (1961).

The commissioner has argued that the exception has no
applicability in this case. He claims that the purpose of
G. L. c. 175, § 193R, is to facilitate the issuance of certain
types of low-cost insurance, and that his actions there-
under cannot be seen as governmental action affecting
competitive position. Rather, he argues, the competitive
injury is solely a result of the operation of market forces.[7]
This is too restrictive an application of the principle which
can confer standing. Not only must the particular statute
under which the violation is alleged to have occurred be
examined in order to see whether the alleged injury is
within the parameters of the statutory concern but, in the
case of a regulated industry, we must ascertain whether
the type of injury alleged is inconsistent with the aims and
purposes of the entire regulatory scheme. If the injury
alleged is within the scope of those concerns we believe
that a challenger has shown sufficient injury to establish
standing.

In the case of the insurance industry it is well estab-
lished that the business of insurance is subject to a large
degree of legislative regulation and that the power exists
to establish reasonable regulation in the public interest.
*Attorney Gen.* v. *Prudential Ins. Co. of America,* 310 Mass.
762, 765 (1942). It is also evident that the commissioner
has certain obligations in the administration of the regula-
tory scheme. See G. L. c. 175, § 3A. Inherent in the nature
of these obligations are certain expressed public policies
or concerns which can be vindicated by allowing those
injured by official action allegedly inconsistent with these
policies to challenge them.

---

[7] We note that in framing Regulation 3-74 the commissioner held a
public hearing at which organized groups of insurance agents and brok-
ers such as MAIIAB appeared and were heard. No insurers offered
comment at the hearing.

An examination of the entire regulatory scheme governing the insurance industry shows a clear public interest in the maintenance of a reasonable competitive level within the industry. This policy is clearly expressed in the rate setting provisions which are incorporated by reference in G. L. c. 175, § 193R. See G. L. c. 174A, § 2; G. L. c. 175, § 113B; G. L. c. 175A, §§ 2, 4. For example, G. L. c. 174A, § 2, and a parallel provision, G. L. c. 175A, § 2, declare that the statutory purpose is "to promote the public welfare by regulating insurance rates to the end that they shall not be excessive, inadequate or unfairly discriminatory," and further that nothing in the chapter was meant to preclude "reasonable competition." Cf. *Westland Hous. Corp.* v. *Commissioner of Ins.,* 352 Mass. 374 (1967). See also G. L. c. 175, § 113B; G. L. c. 175A, § 5 (*a*) (4).

To construe these statements of policy as only applying to the rate setting process would be to disregard obvious legislative purpose. It is clear that the Legislature was acting in what it believed was the public interest in defining goals of precluding unreasonable competition and discriminatory rates. Cf. *Chicopee Co-op. Bank* v. *Board of Bank Incorporation,* 347 Mass. 744, 752 (1964). Thus if the plaintiffs in this case allege an economic or competitive injury which on its face implicates the effectuation of these important public policies then it can be said that the injury is within the statutory zone of concern.

The powers and duties of agents and brokers in relation to marketing of insurance is set forth in G. L. c. 175, §§ 163-166. These sections clearly indicate that the ability of the agent as representative of the insurer, or the broker in placing policies with insurers, to compete for business is dependent on those coverages made available to them by insurers for marketing. Since it is persons such as the plaintiffs who are often the conduit for public contact with the insurer, the coverages available to agents and brokers are an essential factor in determining the nature of competition in the insurance industry. If an insurer can offer coverage in a manner which bypasses the agent or broker, it is clear that their alternative coverages represent a form

of competition to the agent and broker. Moreover, the traditional role and function of brokers, and to a lesser degree of agents, in assisting the public to obtain adequate and reasonably priced insurance coverage would be jeopardized. If the commissioner's regulation is in violation of the statute, he has, in effect, by administrative fiat disregarded an express legislative determination as to the nature and extent of competition in the insurance industry. To rule that agents or brokers lack standing and that only insurers could be proper plaintiffs would mean that insurance companies by their own inaction in failing to challenge the regulation could unilaterally limit, in a manner not envisioned by the Legislature, the ability of brokers and agents to operate effectively in the marketplace. This would create the potential of a lessening of the role and vitality of such persons not because of marketplace conditions but as a result of administrative actions of the commissioner.

Since we find in this case not only an allegation of loss but also a clear allegation that the plaintiffs might be subject to unfair competition which is arguably contrary to established legislative policy, the alleged injury is within the scope of the legislative concern. The governmental action threatens the plaintiffs in a manner sufficient to confer standing to challenge the failure of the regulation to extend to mass merchandising plans.

2. Having established that agents and brokers have standing to challenge the regulation in their individual capacities, we turn to the question whether MAIIAB has standing to assert the rights of its members.[8]

The commissioner argues that the association is not the "real party in interest" as required by Mass. R. Civ. P. 17 (a), 365 Mass. 763 (1974). The plaintiff MAIIAB on the other hand argues that it is a party authorized by statute under rule 17 (a) (see G. L. c. 180, § 6; G. L. c. 156B, § 9 [*b*]), and that the purposes of rule 17 (a) can be best

---

[8] Our resolution of this issue in no way affects the capacity of the individual plaintiffs in this action.

effectuated by recognizing associational standing in this instance. While there is some authority supporting the commissioner's view, see *Farmers Co-op. Oil Co.* v. *Socony-Vacuum Oil Co.,* 133 F.2d 101, 103 (8th Cir. 1942), the issue has not been decided by this court under rule 17 (a). Cf. *Boone Valley Co-op. Processing Ass'n* v. *French Oil Mill Mach. Co.,* 383 F. Supp. 606, 611 (N.D. Iowa 1974).

The purpose of the "real party in interest" requirement of rule 17 (a) is to assure that a defendant is only required to defend an action brought by a proper plaintiff and that such an action must be defended only once. J.W. Smith & H.B. Zobel, Rules Practice § 17.2 (1975). This purpose can be best effectuated by recognizing MAIIAB as a party authorized by statute to bring an action on behalf of unnamed beneficiaries.

Rule 17 (a) "contemplates ... that a judgment for or against the statutory plaintiff will bar further action on the part of the unnamed ... [parties]." *Braun* v. *Hassenstein Steel Co.,* 21 F.R.D. 343, 346 (D.S.D. 1958). 6 C.A. Wright & A.R. Miller, Federal Practice and Procedure § 1552 (1971). See *United Fed'n of Postal Clerks* v. *Watson,* 409 F.2d 462 (D.C. Cir.), cert. denied, 396 U.S. 902 (1969). See also *Rollins Environmental Servs., Inc.* v. *Superior Court,* 368 Mass. 174, 179-180 (1975). The effect of this rule, of course, is to avoid a multiplicity of suits by similarly situated plaintiffs involving the same or similar causes of action. *United Fed'n of Postal Clerks* v. *Watson, supra.*

A corporation formed under G. L. c. 180 has the right to sue and be sued. G. L. c. 180, § 6. G. L. c. 156B, § 9 (*b*). The obvious purpose of allowing such a power is recognition of the fact that the corporate interest in a case such as this reflects that of at least a majority of its individual members. Cf. *National Ass'n of Letter Carriers* v. *Independent Postal Sys. of America, Inc.,* 336 F. Supp. 804, 806 (W.D. Okla. 1971), aff'd on other grounds, 470 F.2d 265 (10th Cir. 1972). To recognize this corporation as the real party in interest under rule 17 (a) not only avoids a multiplicity of actions by the individual members of the

association, but also assures that the interests of the members as a collective group can be fully presented on litigation of the matter, due to the pooling of financial resources which is possible.

Not only are there no valid reasons for refusing to recognize the status of MAIIAB as the real party in interest, but a failure to do so will, in all probability, disserve the explicit purpose of rule 17 (a).

3. The order of the single justice is reversed and the case is remanded to the county court for further proceedings. On remand, the single justice may transfer the matter to the Superior Court for trial if he deems it appropriate.

*So ordered.*