J. Philip Mitchell & others[1] *vs.* Secretary of
Administration & another.[2]

Suffolk. May 6, 1992. - August 10, 1992.

Present: Liacos, C.J., Wilkins, Abrams, Lynch, & Greaney, JJ.

*Commonwealth*, Financial matters. *Constitutional Law*, Appropriation of
money. *General Court. Statute*, Appropriation of money.

Provisions of St. 1991, c. 145, § 5, directing the comptroller to transfer
certain money from the Highway Fund to the General Fund in order to
balance the Commonwealth's books for the 1991 fiscal year, did not
violate the requirement of art. 78, as amended by art. 104, of the
Amendments to the Massachusetts Constitution that certain revenues
be expended only for specified transportation purposes since, in the fis-
cal year in question, the Legislature had appropriated more money for
the purposes identified in art. 78 than the Commonwealth had received
from art. 78 sources. [333-334]

Provisions of St. 1991, c. 145, § 5, directing the comptroller to transfer
certain money from the Highway Fund to the General Fund in order to
balance the Commonwealth's books for the 1991 fiscal year, did not
impermissibly delegate legislative power to the comptroller. [334]

Monies in the Infrastructure Fund, created by G. L. c. 29, § 2O, were
subject to appropriation and, accordingly, were "undesignated" for pur-
poses of provisions of St. 1991, c. 145, § 5, directing the comptroller to
transfer certain money to the General Fund in order to balance the
Commonwealth's books for the 1991 fiscal year. [334-336]

Provisions of an "outside" section of a supplemental appropriation act for
the 1991 fiscal year directing a transfer of money from one fund to
another dealt with a matter closely related to the appropriation of
funds; thus this court had no occasion to consider a claim that the Leg-
islature, by including the section in question, had unconstitutionally ap-
pended "general legislation" to an appropriation act. [336-337]

---

[1]Thirty individuals (including twenty-four taxpayers) and eight
membership organizations "whose members would benefit from increased
state expenditures on highway, road and bridge construction," according to
the parties' statement of agreed facts.

[2]The comptroller.

CIVIL ACTION commenced in the Supreme Judicial Court for the county of Suffolk on September 19, 1991.

The case was reported by *Wilkins*, J.

*Steven J. Comen* (*John W. Bishop, Jr.*, with him) for the plaintiffs.

*Thomas A. Barnico*, Assistant Attorney General (*Peter Sacks*, Assistant Attorney General, with him) for the defendants.

ABRAMS, J. The plaintiffs challenge the legality of the comptroller's transfer of $234,828,463 from the Highway Fund to the General Fund in order to balance the Commonwealth's books for Fiscal Year 1991 (FY91). The plaintiffs seek a declaration that the transfer violates arts. 48, 63, and 78 of the Amendments to the Massachusetts Constitution.[3] A single justice reserved and reported this action to the full court on a statement of agreed facts. We conclude that the transfer was authorized by statute, and is constitutional.

*Background.* Article 78 mandates that certain revenues, principally automotive registration fees and gasoline taxes, be expended only for specified transportation purposes.[4] In FY91, $776,879,980 in revenues were subject to restrictions on expenditures imposed by art. 78. Nearly all of these art. 78 revenues were credited to the Highway Fund, one of the three principal operating funds of the Commonwealth. Dur-

---

[3]The plaintiffs also seek permanent injunctive relief ordering the defendants to retransfer all or part of the funds involved to the Highway Fund. Because the parties have agreed that, if we were to hold the transfer invalid, the funds involved would be retransferred to the Highway Fund, we do not reach the issue of the propriety of injunctive relief.

[4]Article 78, as amended by art. 104 of the Amendments, provides in relevant part: "No revenue from fees, duties, excises or license taxes relating to registration, operation or use of vehicles on public highways, or to fuels used for propelling such vehicles, shall be expended for other than cost of administration of laws providing for such revenue . . . payment of highway obligations, or cost of construction, reconstruction, maintenance and repair of public highways and bridges, and mass transportation lines and of the enforcement of state traffic laws, and for other mass transportation purposes; and such revenue shall be expended by the commonwealth . . . for said highway and mass transportation purposes only and in such manner as the general court may direct . . . ."

ing the same fiscal year, $371,843,989 from the General Fund, another of the Commonwealth's principal operating funds, were expended for transportation-related purposes.

In December, 1991, the comptroller determined that, as of the end of FY91, the "undesignated component"[5] of the balance of the Highway Fund reflected a surplus of $267,967,701, which included $117,329,963 allocated to a "subfund" known as the Infrastructure Fund. The comptroller also determined that the "undesignated component" of the General Fund reflected a deficit of $234,828,463 at the end of FY91. The comptroller therefore transferred the funds at issue from the Highway Fund to the General Fund to offset the deficit in the latter, pursuant to St. 1991, c. 145, § 5, the final supplemental appropriation act for FY91.[6]

The monies comprising the General Fund and the Highway Fund are pooled together for banking and investment purposes. Expenditures charged to either fund are made from these pooled accounts without regard to the original source of cash in any particular account. The transfer of $234,828,463 from the Highway Fund to the General Fund was completed

---

[5]See note 6, infra.

[6]Statute 1991, c. 145, § 5, provides: "Notwithstanding the provisions of any general or special law to the contrary, the state comptroller is directed to conduct the following transfers for the fiscal year nineteen hundred and ninety-one: pursuant to [G. L. c. 29, § 5C], from the funds contributing to the consolidated net surplus in the operating funds, as defined in [G. L. c. 29, § 1], to the Commonwealth's Stabilization Fund; and insofar as the undesignated component of fund balance in one or more of said funds is a negative number after the transfers required by the preceding clause, and insofar as the undesignated component of fund balance in one or more of said funds is a positive number after the transfers required by the preceding clause, additional transfers shall be conducted between the funds contributing to the consolidated net surplus in the operating funds to eliminate, insofar as possible, any negative undesignated component of fund balance in any of said funds; provided that such transfers as directed in the immediately preceding clause shall be sequenced so as first to reduce as necessary, but not in an amount which would cause a negative number, the undesignated component of fund balance in whichever of said funds has the largest such balance, and second to reduce as necessary, but not in an amount which would cause a negative number, the undesignated component of fund "balance in whichever of said funds has the smaller such balance."

on the books of the Commonwealth by charging that amount to the Highway Fund and crediting that amount to the General Fund. The transfer was retroactive to June 30, 1991. The transfer was not accompanied by any transfer between any of the bank or investment accounts in which Highway Fund and General Fund revenues are maintained.

*Discussion.* The plaintiffs argue that § 5 violates art. 78, because it allegedly directs the transfer of money from the Highway Fund to defray expenditures made from the General Fund for purposes not permitted by art. 78.[7] We disagree.

Nothing in art. 78 addresses the transfer of money between statutory "funds," such as the General Fund and the Highway Fund, located within the treasury. Article 78 requires only that art. 78 revenues be expended for certain transportation-related purposes, and contains a broad delegation of power to the Legislature to "direct" the "manner" in which this goal shall be attained. As long as, in any given

---

[7]The defendants argue that we should dismiss this action because the plaintiffs have not properly invoked any of the jurisdictional statutes cited in their complaint. We conclude that there is an actual controversy and that the plaintiffs have legal standing; therefore, they have properly sought declaratory relief pursuant to G. L. c. 231A. "The 'actual controversy' requirement of G. L. c. 231A, § 1, is to be liberally construed." *Boston* v. *Keene Corp.*, 406 Mass. 301, 304 (1989). "[A] dispute over an official interpretation of a statute constitutes a justiciable controversy for purposes of declaratory relief." *Santana* v. *Registrars of Voters of Worcester*, 384 Mass. 487, 493 (1981), citing *Massachusetts Ass'n of Indep. Ins. Agents & Brokers, Inc.* v. *Commissioner of Ins.*, 373 Mass. 290, 293 (1977).

"The question whether an actual controversy exists is closely related to the issue of standing." *Id.* at 292. "A party has standing when it can allege an injury within the area of concern of the statute or regulatory scheme under which the injurious action has occurred." *Id.* at 293. The plaintiffs, individuals and organizations who stand to benefit from increased expenditures on road and bridge construction, argue that they have been injured because the balance in the Highway Fund was significantly decreased as a result of the transfer, and, were the money to remain in the Highway Fund, it could only lawfully be spent on road, bridge or Massachusetts Bay Transportation Authority (MBTA) items. At oral argument the assistant attorney general conceded that, if the retransfer were effected, it would "give a leg up" to the plaintiffs in their efforts to obtain increased expenditures on road and bridge construction.

fiscal year, expenditures for art. 78 purposes at least equal
revenue received from art. 78 sources, it is of no constitu-
tional significance to and from which funds these amounts
were credited and spent. In FY91 the Legislature appropri-
ated more money for art. 78 purposes than it received from
art. 78 sources; the transfer, therefore, was consistent with
art. 78.

The plaintiffs also argue that § 5 modified the previously
enacted mass transit appropriation "fund splits" in the FY91
General Appropriation Act.[8] This modification, argue the
plaintiffs, altered the legislative purpose, and therefore con-
stituted an unconstitutional exercise of legislative authority
on the part of the comptroller.

Assuming, without deciding, that § 5 may be properly con-
strued as an amendment to a prior appropriation act,[9]
"[t]here is no constitutional limitation on the general power
of the Legislature to amend a prior enactment making appro-
priations." *Answer of the Justices*, 406 Mass. 1220, 1225
(1989). See *Opinion of the Justices*, 373 Mass. 911, 913-914
(1977); *Opinion of the Justices*, 294 Mass. 616, 621-622
(1936); G. L. c. 29, § 15 (1990 ed.). Further, "[t]he Legisla-
ture may delegate to a[n] . . . officer the working out of the
details of a policy adopted by the Legislature." *Massachu-
setts Bay Transp. Auth.* v. *Boston Safe Deposit & Trust
Co.*, 348 Mass. 538, 544 (1965). Here, the authority dele-
gated to the comptroller to transfer funds is expressly limited
by § 5, as well as the two statutes cited therein, G. L. c. 29,
§§ 1 and 5C.

The plaintiffs alternatively argue that, even if we were to
hold that the transfer is proper because General Fund ex-
penditures on transportation-related purposes exceed the

---

[8]The FY91 General Appropriation Act, St. 1990, c. 150, directed that
eighty per cent of expenditures to subsidize the MBTA and regional trans-
portation authorities be made from the General Fund, and the remaining
twenty per cent, from the Highway Fund.

[9]The defendants characterize the transfer as a reimbursement "for pay-
ments made in accordance with existing fund splits. The fund splits them-
selves remain on the statute books as valid law."

amount of money transferred from the Highway Fund, the transfer is nevertheless improper — at least as to the money transferred from the Infrastructure Fund. General Laws c. 29, § 2O (1990 ed.), which establishes the Infrastructure Fund, provides in part that "[e]xpenditures from the Infrastructure Fund shall, subject to appropriation, be made . . . (*iii*) for direct expenditures [on transportation purposes, excluding the MBTA] . . . and (*iv*) for capital projects and capital assistance funds for regional transit authorities." The transfer of money from the Infrastructure Fund was improper, argue the plaintiffs, because "virtually all of those [transportation-related] expenditures [from the General Fund] were made on the MBTA, despite the fact that [§ 2O] specifically excludes expenditures on the MBTA from Infrastructure Fund revenues."

Under § 5, the comptroller was required to calculate the "undesignated component of fund balance" in the operating funds, and to transfer only "undesignated" amounts. The parties' dispute on this issue centers around the meaning of "undesignated" amounts. There is no statutory or regulatory definition of the term "undesignated component of fund balance." The plaintiffs argue that the money in the Infrastructure Fund was not "undesignated" because § 2O "details the limited and defined purposes on which 'special receipts' may be expended." However, the Highway Fund and the Local Aid Fund, too, receive specific revenues, to be used, subject to appropriation, for specific purposes, see G. L. c. 29, § 2D (1990 ed.); G. L. c. 90, § 34 (1990 ed.); yet other statutes recognize that the Highway Fund and the Local Aid Fund may contain "undesignated" balances that may be transferred to other funds. See G. L. c. 29, § 1 (defining "[c]onsolidated net surplus in the operating funds" as "the sum of the undesignated fund balances in the General Fund, the Local Aid Fund, and the Highway Fund"); G. L. c. 29, § 5C (directing transfers of amounts contributing to the "consolidated net surplus in the operating funds," including amounts "from the Local Aid Fund").

If the plaintiffs were correct that a fund cannot be "undes-
ignated" if it receives specific revenues to be used, subject to
appropriation, for specific purposes, then not only § 5, but
also G. L. c. 29, § 1, and G. L. c. 29, § 5C, would be ren-
dered partially or wholly ineffective, because the Highway
Fund and the Local Aid Fund could never contain any "un-
designated" fund balances. "An intention to enact a barren
and ineffective provision is not lightly to be imputed to the
Legislature." *District Attorney for the N. Dist.* v. *Lowell
Div. of the Dist. Court Dep't,* 402 Mass. 511, 514 (1988),
quoting *Commonwealth* v. *Neiman,* 396 Mass. 754, 758
(1986). See *Ben Elfman & Sons* v. *Home Indem. Co.,* 411
Mass. 13, 18 (1991) ("Construing a statute in a way that
nullifies one of its provisions is inappropriate if there is a rea-
sonable alternative").

We agree with the comptroller's classification of money as
"designated" only if it is "set aside by legislative mandate
and is not subject to further appropriation." Only if public
monies have been specifically appropriated, as opposed to be-
ing "subject to appropriation," is "the decision how to spend
them [removed] from the control of the Legislature," *Associ-
ated Indus. of Mass.* v. *Secretary of the Commonwealth,
ante* 1, 6 (1992). See *Opinion of the Justices,* 297 Mass.
577, 580 (1937) (where money has been specifically appro-
priated Legislature is "powerless to appropriate any revenue
from that source to any other public use"). There is nothing
in the language of either § 5 or § 2O that exempts the Infra-
structure Fund from the transfer provisions applicable to the
Highway Fund as a whole, and § 2O expressly states that the
money in the Infrastructure Fund is "subject to appropria-
tion"; accordingly, it was undesignated and could be trans-
ferred to the General Fund pursuant to § 5.

Last, the plaintiffs argue that § 5 is an unconstitutional
"outside section"[10] of an appropriation act because it ap-

---

[10]In each general appropriation bill since 1919, the first section of the
act has set forth its purpose and the second section has contained the line
items of appropriation. Additional sections are known as "outside
sections."

pends "general legislation" to a "general appropriation act," in violation of arts. 48 and 63. Appending § 5 to an appropriation bill improperly insulates it from referendum petition, argue the plaintiffs, because art. 48, The Referendum, Part III, § 2, expressly excludes from referendum any law "that appropriates money for the current or ordinary expenses of the commonwealth or for any of its departments, boards, commissions or institutions," and "a law is not subject to referendum if any significant part relates to an excluded matter." *Powell* v. *Cole-Hersee Co.*, 26 Mass. App. Ct. 532, 535 (1988). The plaintiffs further argue that, because § 5 is a "general provision[ ] of law," appending it to the appropriation bill violates art. 63 because "[t]he plain language, history, and purposes of [art.] 63 compel the conclusion that only appropriations, and conditions and restrictions thereon, may be included in an appropriation bill."

We have declined to decide the constitutional question whether nonappropriation matters may be included in an appropriation bill where the "outside section" is "sufficiently related to the subject of the appropriation of funds." *Brookline* v. *The Governor*, 407 Mass. 377, 382, 384 (1990). So, too, in this case, because § 5 relates to the appropriation of funds, we do not consider the plaintiffs' constitutional challenges. General Laws c. 29, § 1, defines an "[a]ppropriation" as an "authorization . . . of the expenditure of state revenues from a specified fund." Sections 2 and 4 of art. 63 require that appropriation bills specify the "means" by which expenditures shall be "defrayed." The transfer of money from one fund to another, in order to ensure that the receiving fund will contain enough money to "defray" appropriations already made from that fund, is closely related to an appropriation or "directly concerns" it. *Id.* at 383.

We remand this case to the Supreme Judicial Court for Suffolk County for the entry of a declaration that the transfer was proper and constitutional.[11]

*So ordered.*

---

[11]We note that § 109 of the Fiscal Year 1993 budget, St. 1992, c. 133, states that "[n]otwithstanding the provisions of any general or special law to the contrary, revenue credited to the Highway Fund shall not be transferred to any other fund of the commonwealth for any purpose."