Hinkle, J.
In this declaratory judgment action, plaintiff Hoescht Celanese Corporation, (hereinafter “HCC”) seeks coverage for environmental clean-up costs under various primary and excess insurance policies. All insurers, except Continental Casualty Company (hereinafter “Continental”), have settled with HCC and are no longer active in the litigation. On the eve of trial, Continental moved to dismiss all remaining claims asserted by HCC. As grounds, Continental contends that even if the jury were to accept all facts and legal theories asserted by HCC, HCC’s claims could never reach the attachment point of the Continental insurance policy and thus HCC cannot prove breach of contract by Continental.[2]
BACKGROUND
There is no dispute that Continental issued to Foster Grant, HCC’s predecessor, an excess insurance policy which was in effect from January 16, 1970 to January 16, 1973. HCC has dismissed all claims asserted against Continental arising under the policy period of January 16, 1971 to January 16, 1973, leaving in issue only the period from January 16, 1970 to January 16, 1971. The Continental policy covered claims arising from the Baton Rouge Work Site and the Petro Processors Site, the only two remaining work sites left in the litigation.
The policy provided that Continental would “indemnify the insured for the amount of loss which is in excess of the applicable limits of liability of the underlying insurance ...” HCC and Continental do not dispute that the attachment point of the policy is $16 million. Thus, Continental is not obligated to cover a loss until $16 million of underlying coverage has been exhausted.
HCC, in its November 2, 1998 Supplemental Response to Defendants’ Interrogatories, stated that it has incurred or “expects to incur" $7,307,621.20 in remediation and defense costs in connection with the Petro Processors Site. HCC, in the joint pre-trial memorandum dated June 29, 1999, stated that it had incurred the following expenses at each of the different units at the Baton Rouge Site:
Foster Grant Unit $ 8,806,874.12
Badger Unit $ 8,554,772.51
Tar Ponds $25,416,241.93
DISCUSSION
A. The Baton Rouge Site
Continental asserts that based upon certain “admissions” made by HCC and the doctrine of judicial estoppel, HCC cannot recover against Continental because its alleged damages will never reach the attachment point of Continental’s policy.[3] The motion with respect to the Baton Rouge Site is denied.
B. The Petro Processors Site
Continental alleges that there is no justiciable claim or controversy for which HCC can obtain declaratory relief against Continental in connection with the Petro Processors Site. In support, Continental contends that HCC makes no claim for future costs which will reach Continental’s attachment point.
In a declaratory judgment action, the purpose of the “actual controversy” requirement of G.L.c. 231A is to ensure that litigants file complaints to obtain relief only from “uncertainty and insecurity with respect to rights, duties, status and other legal relations.” G.L.c. 231A, §9; Massachusetts Associations of Independents Insurance Agents and Brokers, Inc. v. Commissioner of Insurance, 373 Mass. 290, 292 (1977). The “actual controversy” requirement has been defined as:
a real dispute caused by the assertion by one party of a legal relation, status or right in which he has a definite interest, and the denial of such assertion by another party also having a definite interest in the subject matter, where the circumstances attending the dispute plainly indicate that unless the matter is adjusted such antagonistic claims will almost immediately and inevitably lead to litigation. (Emphasis added.)
Bunker Hill Distributing Inc. v. District Attorney for the Suffolk District, 376 Mass. 142, 144 (1978), quoting School Comm. of Cambridge v. Superintendent of Schools of Cambridge, 320 Mass. 516, 518 (1946). Although Massachusetts courts have construed the “actual controversy” requirement liberally, an abstract claim will not support a request for declaratory judgment. Quincy City Hospital v. Rate Setting Commission, 406 Mass. 431, 439 (1990). A declaratory judgment action cannot pertain to hypothetical controversies *365 but rather must involve an issue which when decided will have “immediate impact” on the litigators. Massachusetts Associations of Independents Insurance Agents and Brokers, Inc. v. Commissioner of Insurance, 373 Mass. at 292.
No Massachusetts appellate court has addressed the justiciability issue in the context of an excess insurer’s liability for environmental clean-up costs contingent on future events. In other jurisdictions, “(wjhere an excess insurer’s liability depends upon a future contingency, [i.e. exhaustion of underlying policies] courts should focus on the practical likelihood that the contingencies will occur.” (Internal quotations omitted.) Maryland Casualty Company v. W.R. Grace & Co. 1996 WL 306372 (S.D.N.Y) at *2, quoting Associated Indem v. Fairchild Industries, 961 F.2d 32, 35 (2nd Cir. 1992); see also Providence Journal Co. v. Travelers Indemnity Co., 938 F.Supp. 1066, 1079-80 (D.R.I. 1996); UMC/Stamford v. Allianz Underwriters, 647 A.2d 182, 189 (N.J. Super. 1994). In other words, “absolute proof that an excess insurer’s policies will be triggered is by no means required in order to establish a ripe controversy . . . However, the court may dismiss a defendant when the plaintiff does not show a reasonable likelihood that the claims will mature as to that defendant." Hoechst Celanese Corp. v. National Union Fire Insurance Compnay, 623 A.2d 1133, 1137 (Del. Super. 1992) (in products liability action, evidence showed that there was reasonable likelihood that excess insurance policies would be triggered).
Here, the record before me indicates that HCC’s damages, incurred or expected to incur, for remediation at the Petro Processors Site is $7,307,621.20. See HCC’s November 2, 1998 Supplemental Response to Interrogatory No. 13 of Defendant’s First Joint Set of Interrogatories. It has taken 15 years for HCC to expend this amount. As stated previously, it is undisputed that Continental’s attachment point is $16 million. HCC has provided no evidence which shows that there is a reasonable likelihood that HCC will exhaust the insurance coverage underlying the Continental policy and reach Continental. See UMC/Stamford v. Allianz Underwriters, 647 A.2d at 189 (attachment point of excess policy was $50 million; plaintiffs damages claim as $25 million; no likelihood that excess policy would be reached). HCC’s assertions that the estimates of future costs at the Petro Processors Site take HCC’s total damages well over Continental’s attachment point is speculative and not supported by the record before the court.
A declaration cannot be based upon hypothetical, contingent future events, but rather, must have “an immediate impact on the rights of the parties.” Massachusetts Associations of Independents Insurance Agents and Brokers, Inc. v. Commissioner of Insurance, 373 Mass. at 292. Based upon no reasonable likelihood that the Continental policy will be reached in the foreseeable future, I find and rule that there is no actual controversy between HCC and Continental. Accordingly, the claims asserted in connection with the Petro Processors Site under the excess insurance policy issued by Continental for the policy period of January 16, 1970 to January 16, 1971 are dismissed.
ORDER
For the above reasons, the Court ORDERS that Defendant Continental Casualty Company’s Supplemental Motion in Limine to Dismiss All Remaining Claims is DENIED as to claims arising from the Baton Rouge Site and ALLOWED as to claims arising from the Petro Processors Site.

Although Continental addressed its motion as a motion to dismiss, the motion is technically a motion for summaiy judgment because the court, in its review, looked beyond the complaint and took into consideration HCC’s November 2, 1998 Supplemental Response to Interrogatory No. 13 of Defendants’ First Joint Set of Interrogatories.

Trial commenced on November 20, 1998. Continental’s motion was heard the previous day and taken under advisement. Thus this memorandum issues during trial.