LAURIEN ENOS & others[1] *vs.* SECRETARY OF
ENVIRONMENTAL AFFAIRS.

No. 98-P-613.

Plymouth. September 9, 1999. - November 22, 1999.

Present: ARMSTRONG, GILLERMAN, & PORADA, JJ.

Further appellate review granted, 431 Mass. 1101 (2000).

*Practice, Civil,* Motion to dismiss. *Administrative Law,* Standing. *Massachusetts Environmental Policy Act. Statute,* Construction. *Words,* "Legally cognizable injury."

A taxpayers' complaint seeking declaratory relief under G. L. c. 231A, § 2, sufficiently stated a claim that a certificate of compliance issued by the Secretary of Environmental Affairs with respect to a proposed sewage treatment plant was invalid and sufficiently alleged probable harm to the taxpayers' real property in the vicinity of the plant [242-243], and, where the alleged injuries and damages were within the purview of the administrative processes of the Massachusetts Environmental Policy Act, the plaintiffs had standing to seek such declaratory relief and the Secretary was a proper defendant [243-248].

CIVIL ACTION commenced in the Superior Court Department on September 5, 1997.

The case was heard by *Patrick F. Brady*, J., on a motion to dismiss.

*William S. Abbott* for the plaintiffs.

*Edward G. Bohlen,* Assistant Attorney General, for the defendant.

GILLERMAN, J. The plaintiffs are fourteen taxpayers domiciled in Plymouth who own property in the vicinity of the Eel River. They have brought a complaint seeking a declaratory judgment that a certificate of compliance issued by the Secretary of Environmental Affairs (Secretary) to the town of Plymouth

---

[1]Mary M. Enos, Margaret E. Bergiel, Raymond E. Bergiel, Carla R. Gray, Marjorie S. Nickerson, John R. Nickerson, Lois A. Storsveen, Denis E. Storsveen, Mettie Whipple, Marcia A. Wall, Richard H. Wall, Elizabeth R. Holmes, and Gregory J. Bowles.

regarding the proposed construction of a sewage treatment plant is invalid. The Secretary's certificate was in response to the final supplemental environmental impact report filed by the town of Plymouth (town) to permit the implementation of the town's "Waste Water Facilities Plan" (project). See G. L. c. 231A, § 2 (declaratory judgment procedure available "to secure determinations of right, duty, status or other legal relations under . . . a . . . statute . . . or administrative regulation, including determination of any question of construction or validity thereof which may be involved in such determination"). See also *Westland Hous. Corp.* v. *Commissioner of Ins.*, 352 Mass. 374, 383 (1967); *Villages Dev. Co.* v. *Secretary of the Exec. Office of Envtl. Affairs*, 410 Mass. 100, 106 (1991) ("It is settled that . . . relief [under c. 231A] is available to challenge the legality of administrative action even though the action concerns neither adjudication nor rule making").[2]

The complaint alleged that the town disposes of treated sewage effluent using an outfall pipe which carries the effluent into Plymouth Harbor. The Massachusetts Department of Environmental Protection (DEP) brought suit against the town in 1987, alleging violations of water quality standards. The suit was settled in 1992 by the entry of a consent decree which required the town to achieve compliance with the Massachusetts Clean Waters Act, see G. L. c. 21, §§ 26-53, by the design and construction of a wastewater treatment plant, an effluent disposal facility, and other related facilities.

Efforts to comply with the 1992 consent decree were unsuccessful, and the consent decree was modified in 1994 and called for new studies of the town's problems. The town proposed a new sewage treatment plant which would dispose of treated sewage through the existing outfall pipe with the remainder to be disposed into the groundwater of the Eel River watershed. On November 1, 1996, the Secretary issued her certificate to the effect that the town's "Wastewater Treatment Facilities Plan/ Environmental Impact Report Phase IIIA," as supplemented by

---

[2]In cases seeking declaratory relief regarding administrative action, the plaintiff must show (1) an actual controversy, (2) that he or she has standing, (3) that necessary parties have been joined, and (4) that available administrative remedies have been exhausted. See *Villages Dev. Co.* v. *Secretary of the Exec. Office of Envtl. Affairs*, 410 Mass. 100, 106 (1991). Of these four factors, the Secretary only puts in dispute factor two — the absence of standing of the plaintiffs. We confine this opinion, therefore, to a discussion of that issue.

the town's "Phase IIIB Draft Supplemental Report 'adequately and properly complies with MEPA.' "[3]

Thereupon the town appropriated funds for the design and construction of the proposed facilities, but on January 11, 1997, a referendum vote overturned the appropriation of funds to build a sewage treatment plant which would dispose of the treated sewage into the Eel River watershed.

The town responded by filing a Notice of Project Change with the Secretary to allow for the re-evaluation of eight alternative sites for the plant. On April 2, 1997, the Secretary issued a certificate requiring the town to prepare a Final Supplemental Environmental Impact Report (FEIR). On April 30, 1997, the town's FEIR was submitted to the Secretary for review under the Massachusetts Environmental Policy Act (MEPA), and on June 16, 1997, the Secretary issued a certificate stating that the town's FEIR was in compliance with MEPA.

The town now proposes to construct a sewage treatment plant which disposes of permitted amounts of treated sewage through the existing outfall pipe, with the remainder channeled into the groundwater of the Eel River watershed. The proposed location of the plant is also alleged to be in the immediate vicinity of the properties owned by each of the plaintiffs.

The plaintiffs claim that the Secretary's certificate, issued under the Secretary's regulations, was invalid because the town's FEIR did not comply with MEPA, G. L. c. 30, §§ 61-62H, and its implementing regulations, 301 Code Mass. Regs. §§ 11.01 et seq.[4] The plaintiffs sought a declaration that the Secretary's certificate was invalid and without legal effect, and that a further FEIR was required for further review under MEPA. The Secretary filed a motion to dismiss under Mass.R. Civ.P. 12(b)(1), 365 Mass. 755 (1974).[5,6]

---

[3]The Secretary required additional disclosures regarding environmental impacts without, apparently, affecting the Secretary's certificate of full compliance with MEPA. See note 9, *infra.*

[4]During the relevant time period of this case, the 1993 version of the regulations was in effect. The regulations were amended in 1998.

[5]The motion did not state the grounds on which it was brought. Instead, reference was made to an accompanying memorandum of law. That memorandum is not in the record before us. The plaintiffs do not claim that any of the Secretary's arguments are made for the first time on appeal, and we accept the Secretary's brief to this court as essentially the argument she made below.

[6]The Secretary makes no argument that the plaintiffs have not complied

The judge allowed the Secretary's motion to dismiss on the ground that the plaintiffs lacked standing to maintain their action since the "harm alleged by the plaintiffs cannot be attributed to [the] defendant's determination of the adequacy of Plymouth's FEIR under MEPA. The defendant does not have authority to approve or disapprove the decision to build/site the treatment plant. Plaintiffs' injuries, if any, would be caused by the proponent (Town of Plymouth), not the defendant."

For the purpose of reviewing the allowance of a motion to dismiss, we accept as true the allegations of the complaint, and we draw all reasonable inferences in favor of the opponent of the motion. *Fairneny* v. *Savogran Co.*, 422 Mass. 469, 470 (1996). On that basis we inquire whether it appears *certain* that the plaintiffs were not entitled to relief under any facts which could be proved in support of their claim. See *Spinner* v. *Nutt*, 417 Mass. 549, 550 (1994).

The complaint alleges that the FEIR submitted to the Secretary for review under MEPA did not respond to the Secretary's demand, in response to the town's previous draft FEIR, for additional analysis and disclosure of environmental impacts; failed to contain a plain statement of the major environmental effects of the project and its alternatives; did not address the baseline "no-build" alternative; did not consider the cumulative environmental effects of the projects on other projects in the area; did not adequately quantify the direct and indirect environmental effects of the project; did not identify the means by which negative effects of the project are to be limited; and did not discuss the alternatives to the proposed mitigation measures.

As for the plaintiffs' alleged injuries, the complaint alleges that each plaintiff named in the complaint owns real property which is within 2,000-5,000 feet from the proposed sewage treatment plant, and uses the Eel River for numerous recreational purposes such as fishing, boating, and swimming. As to each plaintiff, the complaint alleges that the use and enjoyment of his or her property will be harmed by the offensive odors produced by the sewage treatment and discharge. The complaint further alleges that the proximity of the proposed sewage treatment

with G. L. c. 30, § 62H, requiring prior notice to the Secretary of any intention to commence an action alleging failure to comply with MEPA.

plant (which in some instances may adversely affect the owner's septic system), and the pollution of the Eel River, will significantly reduce the value of the plaintiffs' properties.[7] As to two of the plaintiffs, the proximity of the proposed sewage treatment plant would adversely affect the business of their trout hatchery and cranberry bogs. In sum, the complaint alleges reasonably foreseeable injuries to the use, enjoyment, and value of the real property of the plaintiffs, as well as the deprivation of their recreational use of the Eel River, all arising out of the degradation of the environment if the town's sewage treatment plant goes forward. Such is the case that *could* be made on the allegations of the complaint.

The town's FEIR is not before us, and we accept as true each of the foregoing allegations, as well as all reasonable inferences that may be drawn in support of the probative value of the allegations. So understood, the complaint, on its face, has sufficiently described an inadequate FEIR as measured by the statutory requirements of an environmental impact report, see G. L. c. 30, § 62B, which we set out in the margin,[8] and as measured by the Secretary's exceedingly detailed requirements for an environmental impact report as set forth in her regulations. See 301 Code Mass. Regs. § 11.07 (1993) (stating the necessity to discuss in "clear, nontechnical language" the project description, "a summary of the major environmental effects of the project and its alternatives," and "a list of all mitigation measures proposed for the project"). The Secretary makes no suggestion to the contrary.

Given the assumed failure of the town's FEIR to satisfy the requirements of § 62B and the Secretary's regulations, the Secretary's certificate of full compliance with MEPA was also presumptively invalid,[9] and we arrive, thus, at the only defense

---

[7]The record appendix includes an affidavit of a realtor regarding the diminution in the value of the plaintiffs' properties that has already occurred. The judge did not convert the Secretary's motion to dismiss into a motion for summary judgment, and therefore did not consider the affidavit. We follow that path.

[8]General Laws c. 30, § 62B, provides that an "environmental impact report shall contain statements describing the nature and extent of the proposed project and its environmental impact; all measures being utilized to minimize environmental damage; any adverse short-term and long-term environmental consequences which cannot be avoided should the project be undertaken; and reasonable alternatives to the proposed project and their environmental consequences."

[9]The complaint alleges that notwithstanding the Secretary's compliance

to this action which is asserted by the Secretary: that the plaintiffs "have no standing to bring a declaratory judgment action against the Secretary." This is so, the argument continues, because the plaintiffs have not shown legally cognizable injury arising out of action taken by the Secretary. "The fatal flaw in the plaintiffs' argument," the Secretary argues, "is that they have not shown a causal connection between their alleged injuries and the Secretary's certification that the [FEIR] complied with MEPA." In short, the Secretary adopts the judge's ruling: if the project goes forward without legal justification, and the plaintiffs then suffer cognizable injuries, the blame must be assigned to the town as the proponent of the project, not the Secretary.

The Secretary's argument misconceives the principle of standing in a case such as the one before us. Of course, the plaintiffs must show legally cognizable injury. See, e.g., *Circle Lounge & Grille, Inc.* v. *Board of Appeal of Boston*, 324 Mass. 427, 430 (1949) ("Commonly a person aggrieved is one whose legal rights have been infringed"). The critical question is, when does an alleged injury become "legally cognizable." See *Villages Dev. Co.* v. *Secretary of the Exec. Office of Envtl. Affairs*, 410 Mass. at 106. In zoning cases, for example, what is legally cognizable may turn on the identification of the "legal rights [which] were intended to be given to the plaintiff by the statute permitting the appeal [from a variance]." *Circle Lounge & Grille, Inc.* v. *Board of Appeal of Boston*, 324 Mass. at 431. Thus, in *Circle Lounge*, the plaintiff, whose land was in a business district, had no standing to complain of the grant of a variance to the defendant whose land was in a residential district. Chief Justice Qua wrote, "[A]lthough a proprietor's rights under

certificate, the Secretary "nonetheless required additional analysis and disclosure of environmental impacts." The Secretary's certificate is not part of the record, and the actions contemplated by this addendum to her certificate are not clear. Nevertheless, the Secretary makes no claim that her certificate of compliance with MEPA is not in effect, or that the plaintiffs' administrative remedies have not been exhausted. We proceed, then, on the undisputed assumption that the issuance by the Secretary of a final certificate of full compliance with MEPA constitutes final agency action by the Secretary. See *Walpole* v. *Secretary of the Exec. Office of Envtl. Affairs*, 405 Mass. 67, 72 (1989) (Secretary's certificate of compliance with MEPA marks the conclusion of the administrative process).

the statute are not necessarily confined to his own zone, and may extend into another restricted zone, he is not entitled to protection greater than that afforded him in his own zone. That marks the outer limits of the *rights intended to be conferred upon him*" (emphasis added). *Id.* at 432. Since the rights granted the plaintiff under the town's zoning code were not violated, the plaintiff's claim of injury from business competition as the basis for his standing to sue was rejected as damnum absque injuria.

This analysis, which turns on identifying the rights intended to be protected by the applicable statute or regulation, was more recently discussed in *Massachusetts Assn. of Indep. Ins. Agents & Brokers, Inc.* v. *Commissioner of Ins.*, 373 Mass. 290, 294 (1977). There, insurance agents and brokers claimed standing to challenge a regulation of the insurance commissioner on the ground that "the plaintiffs might be subject to unfair competition" as a result of the regulation. *Id.* at 296. The case was brought under c. 231A; no statutory right of appeal was involved. The court held that the plaintiffs had standing[10] since "[a]n examination of the entire regulatory scheme governing the insurance industry shows a clear public interest in the maintenance of a *reasonable* competitive level within the industry" (emphasis added). *Id.* at 295. Since the plaintiffs made a showing of unfair competition, they were entitled to maintain their action against the commissioner. The court summarized its holding in cases where private relief from agency action is sought: "A party has standing when it can allege an injury within the area of concern of the statute or regulatory scheme under which the injurious action has occurred. . . . If the injury alleged is within the scope of those concerns we believe that a challenger has shown sufficient injury to establish standing." *Id.* at 293-294.[11] See *Villages Dev. Co.* v. *Secretary of the Exec. Office of Envtl. Affairs*, 410 Mass. at 106, where

[10]The court noted that the " 'actual controversy' and standing requirements should be liberally construed in accord with the provisions of G. L. c. 231A, § 9." *Massachusetts Assn. of Indep. Ins. Agents & Brokers, Inc.* v. *Commissioner of Ins.*, 373 Mass. at 293.

[11]In *Massachusetts Assn. of Indep. Ins. Agents & Brokers, Inc.* v. *Commissioner of Ins.*, 373 Mass. at 295, the court refers to the fact that the case involves a regulated industry, but it did so in the context of a regulatory scheme that "shows a clear public interest in the maintenance of a reasonable competitive level," thereby justifying the recognition of unfair competition as a cognizable injury. Contrast *Circle Lounge & Grille, Inc.* v. *Board of Appeal of Boston*, 324 Mass. at 432.

*Massachusetts Assn. of Indep. Ins. Agents & Brokers, Inc.* v. *Commissioner of Ins.*, *supra*, is cited with approval. See also *Board of Appeals of Rockport* v. *DeCarolis*, 32 Mass. App. Ct. 348, 353 (1992).

We arrive, then, at the central issue in this case: what is the area of concern of MEPA and the regulations promulgated thereunder, and do the plaintiffs' alleged injuries fall within that area of concern? We turn to the MEPA statutes.

The primary purpose of MEPA is the avoidance of damage to the environment by requiring all State and local agencies to determine the environmental impact "of all works, projects or activities conducted by them" and to "use all practicable means and measures to minimize damage to the environment." G. L. c. 30, § 61.[12] These purposes are intended to be given widespread attention by all agencies of governmental authority; § 61 continues: "Unless a clear contrary intent is manifested, *all* statutes shall be interpreted and administered so as to minimize and prevent damage to the environment" (emphasis added). See *Secretary of Envtl. Affairs* v. *Massachusetts Port Authy.*, 366 Mass. 755, 760 (1975).

MEPA's area of concern clearly is the protection of the environment from damage caused by projects having an environmental impact. The administrative vehicle for achieving MEPA's goals of minimizing and preventing damage to the environment is the environmental impact report. See 301 Code Mass. Regs. § 11.07 which, as discussed above, prescribes the detailed discussion of environmental impacts in nontechnical language. See also 301 Code Mass. Regs. § 11.08 (1993), which provides for the opportunity for public hearings, informal workshops, public meetings, written comments from the public, and publication in the Environmental Monitor of notice of the availability of the draft report.

The administrative process of MEPA, then, and the public's involvement in that process, are critical to achieving MEPA's goal of protecting the environment, and claims of the foreseeable degradation both of the environment and of the administrative review process are equally areas of concern of MEPA. Without close adherence to the review process of environmental

---

[12]General Laws c. 30, § 61, provides in part, "All agencies, departments, boards, commissions and authorities of the commonwealth shall review, evaluate, and determine the impact on the natural environment of all works, projects or activities conducted by them and shall use all practicable means and measures to minimize damage to the environment."

impact reports, there can be no assurance that a project will not significantly and adversely affect the environment. In *Cummings* v. *Secretary of Envtl. Affairs*, 402 Mass. 611, 614 (1988),[13] the court wrote that "[t]he purpose of MEPA was to protect the environment, and that, therefore, an allegation of a violation of MEPA or a regulation pursuant to MEPA qualified under [§ 7A] as a claim that 'damage to the environment is occurring or is about to occur.' . . . Therefore, if the plaintiffs in this case were alleging . . . that a developer or agency proposing a project failed to comply with the procedural requirements of a statute or regulation designed to protect the environment, the Superior Court would have subject matter jurisdiction under G. L. c. 214, § 7A."[14] See note 13, *supra*.

The plaintiffs' alleged injuries and complaints fall squarely within the concerns of MEPA: the foreseeable negative environmental impact of the town's project, and the failure to comply with material requirements of MEPA's administrative process. In particular, the complaint alleges that the foreseeable consequences of the town's allegedly defective FEIR will, if the project goes forward without completing the review process as required by the regulations, cause environmental damage because of noxious odors from the nearby sewage treatment plant and the pollution of the watershed of the Eel River, all of which will result in the deterioration of the value and the use

---

[13]*Cummings* arose under G. L. c. 214, § 7A, not c. 231A. Section 7A offers a statutory remedy to ten persons domiciled in Massachusetts for claims of "damage to the environment" without the necessity of establishing further the standing of the plaintiffs. The section permits a civil action brought by such persons upon allegations that damage to the environment is occurring or is about to occur. The Superior Court may restrain the person causing or about to cause such damage provided that the offending conduct is a violation of a statute, ordinance, by-law, or regulation. The complaint in this case does not allege an entitlement to the remedies provided by § 7A. Such an attempt would, in any event, be futile. It is settled that § 7A is not available in a suit against the Secretary in connection with her administration of MEPA. See *Walpole* v. *Secretary of the Exec. Office of Envtl. Affairs*, 405 Mass. 67, 71 (1989). *Walpole* also holds that the acts of the Secretary in merely administering MEPA are not subject to review by certiorari under G. L. c. 249, § 4. *Id.* at 72-73.

What emerges is that § 7A may be seen as offering parallel relief to c. 231A, although the parties will be different.

[14]See note 13, *supra*, describing the action authorized by G. L. c. 214, § 7A, which is designed to permit judicial intervention in cases where the environmental damage is imminent. There is no claim of imminent damage in this case.

and enjoyment of the plaintiffs' property. The complaint on its face, then, sufficiently alleges that the plaintiffs will incur injuries and damages that fall within the zone of concern that MEPA, and the supporting administrative process, were designed to protect. See *Villages Dev. Co.* v. *Secretary of the Exec. Office of Envtl. Affairs*, 410 Mass. at 106 (future expenses of property owners are cognizable injuries). It follows that the plaintiffs have standing to bring this action to enforce the full range of the requirements of MEPA.[15,16]

The judgment is reversed, and the case is remanded to the Superior Court for further proceedings.

*So ordered.*

[15]No doubt the plaintiffs could await the imminent construction of the town's project, and then bring suit against the town under G. L. c. 214, § 7A. If, as we must assume, the plaintiffs' claims are meritorious, it would make no sense to permit the town to go forward with a complex project that is doomed at the outset. More important is that here, the administrative process has been exhausted, see note 2, *supra*, and to require the plaintiffs to await the imminent construction of the project would have a serious adverse effect upon the credibility and importance of the administrative review process — a process which, as we have stated, is critical to the desired outcome of protecting the environment.

[16]It is important to emphasize at this point that we have only the bare bones of the record of the controversy before us. We have neither the environmental impact statement nor the Secretary's certificate, and we have not considered the merits of the plaintiffs' claims regarding those documents. It may be that a motion for summary judgment on an amplified record, or a trial on the merits, would yield a different understanding of the case. As matters stand, however, we are confined to the narrow issues presented by an appeal from the allowance of a motion to dismiss.