Gershengorn, J.
This case returns to the Superior Court on remand from the Massachusetts Appeals Court. See 26 Mass.App.Ct. 415 (1985). At issue is whether certain pieces of information collected from driver’s license applicants by the defendant, the Registrar of Motor Vehicles (Registrar), have public record status and therefore may be disclosed to members of the public. The data at issue are applicants’ dates of birth, heights, and license numbers that are also social security numbers.[2] Plaintiffs allege that this *157 information is “personal data” whose release violates the Fair Information Practices Act (FIPA), G.L.c. 66A. FIPA defines “personal data” as “any information concerning an individual which can be readily associated with a particular individual; provided, however, that such information is not contained in a public record.”
The Appeals Court held that the information at issue does not have public record status under either G.L.c. 90, §30 (motor vehicle statute) or the law as it existed prior to 1974, when non-retroactive exemptions were added to the public record statute, G.L.c. 4, §§6 and 7. Whether the information has public record status under G.L.c. 4, §7 is the subject of this remand proceeding. In making this determination, the court must balance the governmental and public interest in disclosure against the invasion of plaintiffs privacy. Doe, 26 MassApp.Ct. at 423, 428. If disclosure is found to constitute an “unwarranted invasion of personal privacy,” then the information is exempted from public record status by paragraph (c) of G.L.c. 4, §7, cl. 26 and, trader FIPA, may not be disclosed.[3] If the invasion is warranted, then the Registrar may resume its practice of public disclosure. For reasons stated below, the court holds the invasion to be warranted.
FINDINGS OF FACT
Plaintiffs are individuals who reside in Massachusetts. Defendant, the Registrar of Motor Vehicles, is an Officer of the Commonwealth of Massachusetts with statutory authority over the Registry of Motor Vehicles (Registry). The Registry is an agency within the Executive Office of Public Safety and is vested with authority to make rules and regulations for the division of motor vehicles.
The Registry collects a variety of information from driver’s license applicants and motor vehicle registrants. Prior to this lawsuit, the Registry made available to members of the public, for a fee, certain pieces of the license and registration information collected, including applicants’ names, addresses, heights, birth dates, and license numbers.[4]
The Registry receives requests for this information on a daily basis. Information is sought by a variety of people for a variety of reasons. Law enforcement agencies rely on it in order to identify accurately specific individuals and vehicles involved in incidents that may constitute violations of the motor vehicle laws. Insurance companies use it to identify accurately the licensed drivers and motor vehicles involved in particular accidents; members of the general public also use it for this reason. The data is sought for other purposes as well. Family members use it when searching for lost relatives. Lawyers use driver’s license data when searching for clients or locating witnesses. Employers and potential employers of commercial interstate drivers, where the minimum age is 21, may use it to verify the driving record and age of applicants or employees. The information is also requested for purposes of medical research, public safety, and consumer awareness. Harvard University’s School of Public Health requested and used Registry Data in conducting a study of the relationship between breast cancer, geography and age. R.L. Polk company routinely seeks Registry information from all 50 states, which it uses in order to locate owners when defective automobiles are recalled.
In addition to these general public purposes, the public uses the Registry information at issue in order to fulfill its role as a “watchdog” of government enforcement of the motor vehicle laws. The importance of this role was acknowledged, and the role itself facilitated, by the passage in 1990 of the Lacey Packer Bill. Lacey Packer was 10 years old when she was killed by a drunk driver. Anti-drunk driving and motor vehicle safely advocates used her case to lobby for tougher drunk-driving penalties. The result was the Lacey Packer Bill, adding to G.L.C. 90, §30 the requirement that the Registrar maintain “a record of all convictions of persons charged with violations of the laws relating to motor vehicles, and notwithstanding any general or special law to the contrary, such record shall be public . . .” With the aid of Registry information, members of the public are thus able to monitor the enforcement of motor vehicle laws.
Plaintiffs have waived a claim of privacy as to the disclosure of names and addresses. Access to other pieces of information regularly disclosed — age, height, and license number (where the license number is also the social security number) — has been curtailed by a January 20, 1989 Appeals Court order pending the outcome of this suit. Under the order, the Registrar may disclose social security numbers which are also license numbers, provided that all applicants are informed that this data is a public record and that they may request a license number other than their social security number. This information is to be prominently displayed at every Registry office.
The order is intended to secure compliance with §7 of the Privacy Act of 1974, 5 U.S.C. §552a note (1982), which “requires the Registrar, in requesting [social security] numbers, to inform the individual in advance “whether that disclosure is mandatory or voluntary, by what statutory or other authority such number is solicited and what uses will be made of it.’ ” Doe at 429, quoting 5 U.S.C. §552anote (1982). An additional issue for this court on remand is whether the Registrar has shown compliance with this statute. Doe at 429. If not, social security numbers that are also license numbers may not be released. Id.
The court finds that the Registrar has had in place since at least 1990 a policy requiring all driver’s license applicants (except non-U.S. citizens) to furnish their social security numbers. The reason for this is the usefulness of the social security number as a “universal identifier,” particularly given the high mobility of U.S. drivers. The social security number allows the Registrar “to properly screen Massachusetts drivers through the National Driver Register,” thereby detect- *158 mg “bad drivers” while minimizing any inconvenience to “good drivers.” (Exhibit 11.)
It is also the Registrar's policy since at least 1990 to inform all applicants that they may use a Registry-assigned number rather than their social security number as their license number.[5] Where such a request is made, the applicant is given a computer-generated state or “s-number,” and the individual’s social security number is kept confidential, to be “used only for identification purposes of the Registry of Motor Vehicles in communicating with other motor vehicle and law enforcement departments.” (Exhibit 11.) The Registrar informs applicants of this right by means of signs posted prominently in the Registry offices. They read:
REGISTRY OF MOTOR VEHICLES ATTENTION
DRIVERS LICENSE NUMBERS ARE PUBLIC RECORDS. IF YOU DO NOT WANT TO HAVE YOUR SOCIAL SECURITY NUMBER USED AS YOUR LICENSE NUMBER, THE REGISTRY WILL ASSIGN YOU A DIFFERENT NUMBER.
The words “ATTENTION” and “SOCIAL SECURITY NUMBER” appear in red; the other words are in blue.
A witness for the plaintiff, Stanley Robinson, recently went to the Malden office of the Registry, where he did not see this sign posted. This indicates that the Registry has on at least one occasion been in non-compliance with both its own policies and the Appeals Court order of January 1989. The court finds this to be an isolated and limited lapse in the implementation of the Registry’s policy to inform people of their statutory right against disclosure of their social security numbers. Because it is an isolated lapse, the court finds the Registry to be substantially in compliance with both the January 1989 Appeals Court order and the Privacy Act of 1974.
The second part of the Appeals Court order pending the outcome of this case allows for disclosure of birth dates and heights to the following groups only: law enforcement personnel, insurance companies, and individual members of the public who self-identify themselves as having been involved in motor vehicle accidents. Others requesting applicants’ data receive a computer printout with these pieces of information blackened out by marker. Otherwise, the license information, given to members of the public is essentially the same as that information appearing on the face of a Massachusetts driver’s license: license number, name, address, gender, class of license, restrictions on license, organ donor information, and the date of expiration, which always falls on the month and day of the licensee’s birth.
There are approximately 4.3 million driver’s license holders in Massachusetts. The Registry can process a request regarding one of these licensees based on a license number, registration number, or name. If only a name is provided, the Registry produces a “name scroll” listing all the people in the Registry’s computer system who share that name. Many names are somewhat common, and a few are quite common.[6] As a result, identification of particular license holders by their name alone is often difficult; additional identifiers are needed. Street address information is unreliable because frequently out of date and inaccurate; many people move without informing the Registry of their new address. Even names may be inaccurate, due to changes arising from divorce, marriage, and other name changes. Consequently, further information is often necessary in order to identify correctly the person sought.
Together with the name, two particular pieces of information allow the Registry to make a certain identification. These are date of birth and license or social security number. In the absence of both of these, either is of great assistance. Even height information sometimes helps distinguish between two individuals with the same name.
A lack of additional identifiers can greatly hamper accurate identification. In Springfield, Massachusetts, for instance, there are seven John E. or John F. Kennedys. In the absence of additional information regarding the particular John E. or F. Kennedy sought, an individual would either have to give up the search or contact all seven of these individuals. The problem would be even more acute in a larger metropolitan region, such as Boston.
Plaintiff introduced expert testimony regarding the potential privacy concerns of making universal identifiers such as birth date publicly available.[7] First, there is the problem of aggregation. Taken alone, any given piece of information about a person may not be invasive. Several seemingly innocuous pieces of information taken together, however, may be transformed from inconsequential data to private and personal data. See Doe at 425-27. A second potential problem is the increasing use of universal identifiers such as birth date and name to link together large computer databases, thereby greatly increasing the availability of the data, sometimes to unintended recipients. By gaining access to key identifiers of another person, one may be able to “impersonate” them for certain purposes, for example in order to fraudulently obtain a credit card in their name. Thus, aggregation, technological advances in computer communications, and governmental and commercial reliance on universal identifiers have all made the public disclosure of personal information potentially more invasive than it has been in the past.
The potential for an invasion of privacy is only part of the consideration in determining what level of protection is warranted. Another key consideration is the extent to which the information at issue is available elsewhere. According to Professor Meldman, the more public a piece of information is, the less private it is and the less protection it should be accorded. A piece of information that is readily observable in public sparks only a low level of privacy concern. The same is true for information that has already been made public.
*159 A person’s height is readily observable and is among the most public of personal information.
Information about an individual’s date of birth is widely disseminated in the public sphere. It is available as a matter of public record on street and voting lists maintained by city and town clerks. The court takes judicial notice that it is also available from birth and marriage certificates. See G.L.c. 46, §§1-2A. Accident reports available from the Registry as a matter of public record contain birth dates, as do the driving histories of persons convicted of motor vehicle offenses, also public records available from the Registry.
In addition, individuals routinely supply their date of birth to other members of the public. It may be offered when buying an automobile, applying for a job, renting or buying property, or applying for a credit card. Itisalso offered each time an individual uses her license to conduct a transaction such as cashing a check, renting a car, using a credit card, or purchasing liquor.
Despite the frequency with which it is divulged, not all persons are comfortable with widely revealing their age. One witness presented by the plaintiff, for example, was very reluctant to disclose her age due to her fear of suffering age discrimination in her search for employment. This concern led her to be so protective of her date of birth that she misrepresented her age to a town officer when she registered to vote. While the court is sympathetic to this witness’s fears, it finds that she has a heightened sensitivity to this issue and is not, in fact, a person of “normal sensibilities” in regard to disclosure of her age.
RULINGS OF LAW
In regard to its request for and use of social security numbers, the Registry is in compliance with the Privacy Act of 1974. Accordingly, it may resume disclosure of license numbers that are also social security numbers. It may continue its practice of disclosing license numbers that are not social security numbers.[8]
A person’s age and height are pieces of information which “concern an individual. . . [and] can be readily associated with a particular individual.” This information will therefore be protected as “personal data” by the Fair Information Practices Act (FIPA), G.L.c. 66A, unless it is shown to be contained in a public record.
General Laws c. 4, §7, cl. 26 defines “public records" as including all data made or received by an agency or authority of the commonwealth. Paragraph (c), however, exempts from public record status any “data relating to a specifically named individual, the disclosure of which may constitute an unwarranted invasion of personal privacy.” The issue, then, is whether or not disclosure by the Registry of licensees’ heights and dates of birth constitutes an unwarranted invasion of their privacy. If it does, these pieces of information are not public records and are protected from disclosure ty FIPA. If it does not constitute an unwarranted invasion of privacy, the Registry may resume its practice of disclosure.
In making this determination, the court must weigh the invasion of plaintiffs’ privacy against the governmental and public interest in disclosure. Doe at 423. See also Torres v. Attorney General, 391 Mass. 1, 9 (1984) (“unwarranted” language suggests “a balancing of the public’s right to know as reflected in the Commonwealth’s public records law, and the individual’s right to protection against an unwarranted intrusion into his privacy”). The balancing test must be objective; whether age or height “are such intimate details that their disclosure would be considered an invasion of privacy by ‘an individual of normal sensibilities,’ ... is to be determined in light of ‘community mores and sensibilities.’ ” Doe at 424 (citations omitted).
The Registry has demonstrated a significant public and governmental interest in public disclosure of the items at issue. Dissemination of the data enables the Registry and law enforcement agencies to enforce and administer in an effective manner the motor vehicle laws of the Commonwealth. It is also of vital importance to insurance companies and individuals involved in motor vehicle accidents, who may need this information in order to accurately identify other persons involved in those accidents or in order to locate potential witnesses.
The Doe court acknowledged that “[t]here is a clear public purpose in providing injured members of the public with accurate information as to the owners and operators of automobiles and in making such data readily available.” Doe at 418, n. 7. It questioned, however, whether more than names and addresses are necessary to meet this public need. Based on the evidence before it, this court concludes that more is needed; names and addresses are too often insufficient for purposes of accurately identifying the specific person sought. A date of birth is very useful as an additional identifier. Height, although less useful, is nonetheless sometimes helpful in distinguishing, for example, one John Kennedy from another.
Disclosure of additional identifiers also enables the Registry to assist the public in fulfilling its legislatively-sanctioned “watchdog” role. Section 30 of G.L.c. 90, the Lacy Packer Bill, provides that any person may inspect the Registrar’s records of all convictions of persons charged with motor vehicle offenses. In effect, this allows citizens to act as “watchdogs" over their fellow citizens’ driving histories. It also gives the public oversight of Registry decisions regarding whether license applicants are suitable to maintain their licenses in light of their driving histories; in this way the public can assist the Registry in administering the proper licensing of drivers in Massachusetts. Overall, allowing this citizen “watchdog” role serves the important public interest of road safety.
To carry out this function, however, these citizen “watchdogs” must be able to identify correctly the individual whose driving record they see. If only names and addresses are available, this identification may be impossible to make. This result would frustrate the *160 intent of the Lacy Packer Bill, which is designed to broaden the public’s right to know. Accordingly, this public purpose, as well as the governmental and public purposes described above, weighs strongly in favor of disclosure.
Having established the government’s strong interest in public dissemination of licensees’ dates of birth and height, we turn now to a consideration of plaintiffs’ privacy interests and the degree to which Registry disclosure of this data invades those interests.
There is no doubt that plaintiffs have a privacy interest in their ages and heights. See Doe at 418. It is, however, a weak interest. It is weak due to both the nature of the information disclosed and the availability of this information from many other sources.
The type of personal information that exemption (c) of G.L.c. 4, §7, cl. 26 is designed to protect is information containing “intimate details of a highly personal nature.” Attorney General v. Assistant Comm’r of the Real Property Dept. of Boston, 380 Mass. 623, 625-26 (1980), citations omitted. Examples of such information include “marital status, legitimacy of children, identity of fathers of children, medical condition, welfare payments, alcoholic consumption, family fights [and] reputation.” Id. at 626, n.2, citations omitted. This representative list reflects a widely-shared concept of personal information that is uniquely private and should be protected as such. Additional contemporary examples include a person’s HIV status, mental health condition, drug use, or sexual orientation. There are two salient commonalities of these pieces of information: first, their public disclosure may expose a person to significant risk or ridicule; second, their disclosure is potentially deeply invasive, in that they reveal information that might otherwise be effectively, even profoundly, concealed from the public world.
Neither of these are true of age or height. Although one might suffer some disapprobation from society due to height or age, certainly it would not approach the censure and ostracism that can follow revelations of the “intimate details” listed above. There is also a potential risk factor in disclosure of one’s age, given the prevalence of age discrimination in employment and “ageist” attitudes generally. Again, this risk is qualitatively different from the risks inherent to disclosure that one is gay, or an alcoholic, or a recipient of AFDC. As universally-shared conditions, age and height do not mark one as “different,” unlike “intimate details” of one’s personal life. They may unfairly and without reason shape perceptions about a person, but they do not expose that person to significant danger and intrusion.
A second reason why age and height do not constitute “intimate details of a highly personal nature” is because they are not, after all, intimate. “Intimate” refers to something “[pjertaining to or indicative of one’s deepest nature”; “[ejssential; innermost. . . [v]ery personal; private.” American Heritage Dictionary 672 (2d ed. 1985). Height and age, on the other hand, are available for all the world to see. Height is clearly available to the public. One’s age is also available to the public, give or take a few years. Being difficult to conceal, it is difficult to invade. Although some invasion may result from public disclosure, it is minimal at most.
For these reasons, date of birth is not information that a person of “normal sensibilities” would go to great lengths to keep private. This is the standard the court must consider in applying an objective balancing test. Plaintiffs’ witness, who misrepresented her age when she registered to vote because of her fear of age discrimination, can not be considered a person of “normal sensibilities” in regard to this issue.[9]
In addition to having a weak privacy claim due to the nature of the information at issue, plaintiffs’ claim is weak due to the wide availability of the information from other sources. This is true even apart from the physical availability just described. Dates of birth can be gleaned from street and voting lists, accident reports, and death, birth, and marriage certificates. Consequently, plaintiffs’ privacy expectation in this information is significantly reduced. See Attorney General v. Collector of Lynn, 377 Mass. 151, 157 (1979) (the seriousness of any invasion of privacy is reduced when substantially the same information is available from other sources); Torres v. Attorney General 391 Mass. 1, 7-8 (1984) (whether disclosure of personal information constitutes an unwarranted invasion of privacy for purposes of G.L.c. 4, §7, cl. 26(c) depends in part on availability of information from other sources).
Furthermore, preventing disclosure of this information on the grounds that it invades peoples’ privacy would have the absurd result of requiring information seekers to invade other peoples’ privacy as they search for a particular person. The more information a seeker has about a particular individual, the less information the seeker needs about many people. The seeker either knows enough about the particular John Kennedy sought to accurately identify that individual, or the seeker investigates all the John Kennedys in an attempt to narrow the search. Another possibility, of course, is that the seeker inaccurately identifies another person. Withholding identifying information in the name of privacy, then, may offend the privacy of others. This is an opposite effect than intended.
In sum, the Registry has demonstrated a strong public and governmental interest in making the information at issue available to the public. Plaintiffs have demonstrated only a slight invasion of their privacy, and furthermore, one that is necessary to avoid greater intrusion into the privacy of others. Consequently, the court holds that the governmental and public interest in disclosure of licensees’ heights and dates of birth outweighs any invasion of privacy it provokes; that this disclosure therefore does not constitute an unwarranted invasion of personal privacy for purposes of G.L.c. 4, §7, cl. 26, para, (c); that the information at issue is a matter of public record under G.L.c. 4, §7, *161 cl. 26; and that the information is not protected as “personal data” bv the Fair Information and Practices Act, G.L.c. 66A.[10] The Registry may resume its practice of providing members of the public with information that includes licensees’ heights, dates of birth, and license numbers.
ORDER
Judgment shall enter for the defendant.

 Unless applicants request otherwise, their social security numbers are used as their license number.

 Under G.L.c. 4, §7, cl. 26, “publicrecords” include all data “made or received by any officer or employee of any agency, ... or authority of the commonwealth ...” Several exemptions follow, including paragraph (c), which exempts any “materials or data relating to a specifically named individual, the disclosure of which may constitute an unwarranted invasion of personal privacy.”

 General Laws c. 90, §30 requires the Registrar to maintain and make available for inspection by members of the public “[a] proper record of all applications and . . . licenses issued.” As the Appeals Court noted, however, this statute does not make the licenses and applications themselves public records. Nor does it confer public record status on the information contained in those applications. Doe at 421.

 Commercial drivers are required to use their social security number as their license number by G.L.c. 90F, §7.

 For example, there are approximately 350 Massachusetts driver’s license holders named “John Kennedy.”

 This testimony was provided by Professor Meldman of the Massachusetts Institute of Technology, an expert on contemporary issues of privacy.

 This practice was not challenged by plaintiff in the proceeding before this court.

 The court recognizes and is sympathetic to plaintiffs’ fear that they will be victims of age discrimination if their date of birth is easily available. This is a rational and widespread fear. Other laws, however, are available to deal with this concern. See G.L.c. 151B, §4; see also the Age Discrimination in Employment Act, 29 U.S.C.A. §623. Being specifically designed to address discriminatory practices, these remedies are more appropriate and surely more effective than attempts to remove age information from the public realm.

 Other jurisdictions have reached similar conclusions. See, e.g., Geisberger v. Willuhn, 72 Ill.App.3d, 435, 439 (1979) (date of birth a matter of public record); Braun v. City of Taft (Polston), 201 Cal.Rptr. 654, 661 (1984) (trial court within its discretion in finding that disclosure to press of individual’s salary card did not constitute an unwarranted invasion of privacy; card contained individual’s address, birth date, social security number, job classifications, salary, and credit union number).