MASSACHUSETTS ASSOCIATION OF COSMETOLOGY SCHOOLS,
INC. *vs.* BOARD OF REGISTRATION IN COSMETOLOGY &
another.[1]

No. 94-P-1456.

Suffolk. November 14, 1995. - July 11, 1996.

Present: JACOBS, LAURENCE, & LENK, JJ.

*Board of Registration in Cosmetology. Practice, Civil,* Standing. *Regulation. Administrative Law,* Regulations. *Statute,* Construction. *Words,* "Regulated industry."

A nonprofit corporation whose members are fifteen privately owned, publicly licensed schools of cosmetology within the Commonwealth did not demonstrate that it had standing to sue as a representative of its member schools for declaratory relief concerning the validity of regulations promulgated by the Board of Registration in Cosmetology, where the association did not demonstrate that its members would suffer a legally cognizable injury sufficient to confer standing to sue in their own right. [707-709]

Regulations promulgated in 1994 by the Board of Registration in Cosmetology, 240 Code Mass. Regs. §§ 7.00 et seq., creating licensing requirements for manicuring schools, permitting them to exist independently of hairdressing schools, were a proper exercise of the rule-making authority of that board pursuant to G. L. c. 112, § 87CC. [709-712]

CIVIL ACTION commenced in the Superior Court Department on February 23, 1994.

The case was heard by *Martha B. Sosman,* J., on a motion for judgment on the pleadings, and entry of separate judgment was ordered by *John L. Murphy, Jr.,* J.

The case was submitted on briefs.

*Michael P. Friedman & Peter T. Colli* for the plaintiff.

*Scott Harshbarger,* Attorney General, *& Ben Robbins,* Assistant Attorney General, for the defendants.

LENK, J. The plaintiff Massachusetts Association of

---

[1] Commonwealth of Massachusetts.

Cosmetology Schools, Inc. (association), appeals from the allowance by a Superior Court judge of the defendant's motion for judgment on the pleadings pursuant to Mass.R.Civ.P. 12(c), 365 Mass. 756 (1974). The association's complaint sought review of and declaratory and injunctive relief from the promulgation by the defendant Board of Registration in Cosmetology (board) of regulations, 240 Code Mass. Regs. §§ 7.00 et seq. (1994), concerning the licensure, approval, and operation of manicuring schools (manicuring regulations). The association in essence challenges the validity of these regulations on the ground that they exceed the board's enabling statute, G. L. c. 112, §§ 87T-87KK (the Act). The judge determined that the association failed to establish standing to mount its challenge and further declared that, even if the association had standing, the challenged manicuring regulations are "a reasonable and permissible interpretation of the statutory scheme, and the [b]oard's interpretation is entitled to deference. The legislative purpose is served, not thwarted, by this interpretation." Discerning no error, we affirm.

1. *Standing.* The association is a nonprofit corporation in existence since 1970, whose members are fifteen privately owned, publicly licensed schools of cosmetology within the Commonwealth with a combined enrollment of more than twenty-one hundred students. Since the passage of legislation in 1935 which created it, the board has regulated professional hairdressing, manicuring and, since 1977, aesthetics.[2] In 1994, the board promulgated and published the subject manicuring regulations which created licensing requirements for manicuring schools, permitting them to exist independently of hairdressing schools. Prior to this time, hairdressing schools alone provided manicuring instruction to those who wished to become licensed hairdressers as well as to those who wished to become licensed manicurists.[3]

The association asserts that the manicuring regulations

[2]Aesthetics is the practice of cleansing, stimulating, manipulating, and beautifying the skin by use of human or mechanical means with lotions, creams, or tonics. G. L. c. 112, § 87T.

[3]The board's regulations, before and after the adoption of the manicuring regulations, require hairdressing schools to provide instruction in manicuring for those students studying to become licensed hairdressers. 240 Code Mass. Regs. § 4.04 (1986 & 1994).

would vitiate its member schools' franchise rights, injure the competitive positions of existing cosmetology schools, redefine the marketplace in which existing schools operate in the context of the board's regulatory authority, and jeopardize the reputations of and investments in physical plant and curriculum made by the existing schools.

The association claims to have representational standing to sue on behalf of its member schools for declaratory relief concerning the validity of the manicuring regulations which would adversely affect its members. In so claiming, it relies upon the three-part test set forth in *Hunt* v. *Washington State Apple Advertising Commn.*, 432 U.S. 333, 343 (1977): "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." In determining whether the association has standing to challenge the validity of the manicuring regulations, "[t]he key . . . is to determine whether any individual member of the [association] . . . could demonstrate that he or she has suffered a legally cognizable injury by virtue of [the manicuring regulations]." *Animal Legal Defense Fund, Inc.* v. *Fisheries & Wildlife Bd.*, 416 Mass. 635, 638 (1993). The association has not demonstrated that its members would suffer a legally cognizable injury sufficient to confer standing to sue on this matter in its own right.

It is only when a party can "allege an injury within the area of concern of the statute or regulatory scheme under which the injurious action has occurred" that a party has standing. *Massachusetts Assn. of Indep. Ins. Agents and Brokers, Inc.* v. *Commissioner of Ins.*, 373 Mass. 290, 293 (1977). While standing requirements should be liberally construed for declaratory judgment purposes, the requirement that a party assert a legally cognizable injury, i.e., one within the area of statutory or regulatory concern, limits the nature of those disputes that can, in fact, be heard. *Ibid.*

The association maintains that the purpose of the Act is to provide uniformity of instruction in cosmetology and to provide a means to regulate the professional practice of cosmetologists. This is entirely consistent with the board's sound assertion that the statutory area of concern is the public safety. The injury which the association and its member

schools assert they would suffer by virtue of the manicuring regulations is plainly economic and competitive in nature. "Normally, an injury derived from business competition is not sufficient to confer standing." *Ibid.* The association, however, insists that it and each of its member schools is exempt from this limitation upon standing because its member schools operate in a regulated industry and "[t]his rule does not apply . . . to competitors in a regulated industry . . . who are attempting to challenge governmental action threatening their competitive position." *Everett Town Taxi, Inc.* v. *Aldermen of Everett,* 366 Mass. 534, 538 (1974).

To be sure, the association's member schools are subject to detailed licensure and operating requirements which dictate, e.g., the curriculum, the square footage of classroom space, and even the number of sinks, scissors, and emery boards that each school must maintain. Nevertheless, we are not persuaded that the member schools are part of a "regulated industry," as that term has been used in determining standing, where competition and pricing are tightly controlled.[4] See, e.g., *Boston Edison Co.* v. *Boston,* 390 Mass. 772, 774 (1984) (public utility); *Everett Town Taxi,* 366 Mass. at 538 n.2 (taxicabs); *South Shore Natl. Bank* v. *Board of Bank Incorporation,* 351 Mass. 363, 367 (1966) (banking industry). The purpose of the Act does not encompass the control of competition or pricing in the cosmetology industry. Section 87CC, as amended by St. 1977, c. 806, is explicit that the board is not authorized "to limit the number of hairdressers, aestheticians, demonstrators, manicurists, beauty shops, manicure shops, schools, operators, students or instructors in the commonwealth or in any given locality, or to regulate or fix compensation or prices, or to refuse to register a shop solely for the reason that such shop is to be conducted by a person in his own home on a full or part time basis." The association's member schools are thus not part of a "regulated industry" exempt from the rule against economic standing.

2. *The challenged regulations.* Even if the association had

[4]Indeed, even in the context of an indisputably "regulated industry," standing was a close question, determined in the plaintiff's favor only because the contested construction of a private electrical generating plant would not enhance the competition for consumers but would instead eliminate certain consumers from the competitive market available to the plaintiff. See *Boston Edison Co.* v. *Boston Redev. Authy.,* 374 Mass. 37, 44 (1977).

standing, the manicuring regulations surmount the challenge raised to their validity.

The association claims that the manicuring regulations exceed the board's authority because they are not consistent with legislative intent or statutory language. The association's bottom line is that the Legislature has reserved to itself the authority to create new schools and that the regulations which authorize licensure of separate schools of manicuring exceed the board's statutory rule-making authority. The association largely rests its thesis upon the definition of "school" in G. L. c. 112, § 87T, as inserted by St. 1977, c. 806,

> "[a] school or other institution privately owned, conducted for the purpose of teaching aesthetics or hairdressing and such of its branches as the board may require."

The association contends that the plain language of this definition allows only two distinct kinds of cosmetology schools, those which teach aesthetics and those which teach hairdressing.[5] This statutory language, which the association claims is unambiguous, arguably permits the board to license schools

---

[5]Historically, G. L. c. 112, §§ 87T-87KK, was first enacted in 1935, and the statute was limited to the instruction and licensing of hairdressers. The definition of hairdressing has remained unchanged since that time, despite subsequent amendments to the Act. "Hairdressing" has from the first included within its definition the performance of work as a cosmetologist, which itself has always included the work of manicuring nails. See G. L. c. 112, §§ 87F & 87T. Since 1935, "manicuring" has been separately defined as well. "School" was, until the 1977 amendment, defined as "a school or other institution privately owned, conducted for the purpose of teaching hairdressing or such of its branches as the board may require." In 1977, the Act was amended to recognize the discipline of "aesthetics," a separate definition of "aesthetics" was included for the first time, the definition of "school" was expanded to include aesthetics, and mention was first made of this field throughout various provisions of the Act. In 1985, § 87T of the Act was amended to add the definition of "cosmetologist" contained in § 87F, encompassing the three fields of aesthetics, manicuring, and hairdressing.

At the time the 1977 amendment was enacted, first recognizing aesthetics as a field, only schools of hairdressing (and barbering, see c. 112, §§ 87F-87S) were in existence. The only snippet of legislative history available to the court regarding the 1977 legislation suggests that one legislator believed that the amendments were necessary because those who wished to study aesthetics would otherwise be required by statute to do so in a

of aesthetics and hairdressing and nothing else. Instruction in manicuring is only to be provided by schools of hairdressing as one of its branches.

While initially appealing, this suggested construction of c. 112, § 87T, is but skin-deep and loses its allure when we take into consideration, as we must, the remaining sections of c. 112, §§ 87T-87KK, the "Registration of Cosmetologists" Act. St. 1985, c. 719, § 4. "The words of a statute must be construed in association with the general statutory plan." *Commissioner of Rev.* v. *Wells Yachts South, Inc.,* 406 Mass. 661, 664 (1990). See *Baker* v. *Binder,* 34 Mass. App. Ct. 287, 289 (1993). Properly promulgated regulations such as the manicuring regulations are presumptively valid and are not to be declared void unless their provisions cannot by any reasonable construction be interpreted as in harmony with legislative mandate. *Berrios* v. *Department of Pub. Welfare,* 411 Mass. 587, 594-595 (1992), *S.C.,* 414 Mass. 1004 (1993). One who challenges the validity of a properly promulgated regulation must show that it has no rational relationship to the enabling statute's goals or policies. *Miller* v. *Labor Relations Commn.,* 33 Mass. App. Ct. 404, 408 (1992). Because the challenged manicuring regulations can quite readily be construed in a manner which harmonizes with the legislative mandate as expressed in the entirety of the Act, and because the association has not shown that the regulations bear no rational relationship to the Act's goals, they are valid.

We note as an initial matter that § 87CC of the Act confers upon the board broad rule-making authority over all three distinctly enumerated branches of cosmetology: hairdressing, aesthetics and manicuring. Section 87CC authorizes the board to promulgate rules and regulations for "the establishment of proper standards of professional skill in relation to, and the proper supervision of, hairdressers, aestheticians, . . . manicurists, . . . beauty shops, manicure shops, schools, students and instructors." Section 87T, in addition to containing the definition of "school" on which the association rests

hairdressing school. We note that neither the pre-1977 statute nor pre-1977 regulations address the subject of aesthetics, let alone whether instruction in the field were offered in or would be required to be conducted in a hairdressing school. This bit of legislative history, then, sheds no real light on whether, prior to 1977, the board had, or purported to have, the power to create separate schools for aesthetics, let alone manicuring.

its challenge, also defines "student" as "a person studying hairdressing, manicuring or aesthetics in a school" and "instructor" as one "who teaches all branches of hairdressing, manicuring or aesthetics in a registered school." Section 87T separately defines "manicurist" from "hairdresser" and "aesthetician." While section 87BB only makes reference to the registration of instructors of hairdressing and aesthetics, it otherwise confers upon the board the power to "register any school which it approves" and to "make such reasonable rules and regulations as are necessary for the proper conduct of schools, qualifications of instructors, courses of study, and as to standards of professional training." Further, § 87X defines the unique requirements for a registered manicurist to include training "in a school approved by the board," which training is far less stringent than that required for a registered hairdresser or aesthetician (§§ 87V-87W). Section 87Z concerned with reciprocal registration, makes separate mention of hairdressing, manicuring, and aesthetics, as does § 87AA (operation of registered shops).

The Act viewed in its entirety treats manicuring as a separate branch of cosmetology, over which the board is conferred broad rule-making powers. The association's undue emphasis upon and narrow reading of the definition of "school" in § 87T do not square with the legislative mandate authorizing separate treatment of the three branches of cosmetology in furtherance of the public safety. The association's contention that the word "and" in the phrase "aesthetics or hairdressing and such of its branches" in § 87T's definition of "school" can be construed only conjunctively is incorrect. Notwithstanding the prior language of this definition,[6] itself consistent with construing "school" to permit types of schools other than and in addition to hairdressing schools, "[t]here is ample precedent for construing the word 'and' disjunctively in order to further a recognized legislative purpose." *Somerset* v. *Dighton Water Dist.* 347 Mass. 738, 742-743 (1964). We do so here.

*Judgment affirmed.*

---

[6]See note 5, *supra*.