van Gestel, Allan, J.
This matter is before the Court on two motions to dismiss, each pursuant to Mass.R.Civ.P. 12(b)(1). The motions are: Defendant’s Motion to Dismiss Under Mass.R.Civ.P. 12(b)(1) for Lack of Subject Matter Jurisdiction, Paper #7; and Interveners’ Motion to Dismiss Under Mass.R.Civ.P. 12(b)(1) for Lack of Subject Matter Jurisdiction, Paper #13.

BACKGROUND

The underlying complaint seeks injunctive and declaratory relief pursuant to G.L.c. 231A and, in the alternative, a writ of mandamus under G.L.c. 249, sec. 5, against the defendant, the Commonwealth of Massachusetts, Division of Energy Resources (“DOER”).
At stake are two Statements of Qualifications (“SQs”) issued by DOER to the interveners Greenville Steam Company (“Greenville”) and Boralex Livermore Falls, Inc. (“Boralex”), alleged by the plaintiffs to be in violation of G.L.c. 25A, sec. 11F (the “RPS statute”).
The plaintiffs, Indeck Maine Energy, LLC (“Indeck”), Ridgewood Power Partners, LP and Ridgewood Rhode Island Generation, LLC (the latter two collectively “Ridgewood”), are direct competitors with Greenville and Boralex in the business of low-emission, advanced biomass power conversion. All five of Indeck, the two Ridgewoods, Greenville and Boralex operate certain advanced biomass renewable energy facilities in Maine or Rhode Island, and they each have received SQs from DOER.
Indeck and Ridgewood do not challenge their own SQs, but rather they seek to have the SQs received by Greenville and Boralex revoked — thereby eliminating them as competition.
An understanding of G.L.c. 25A, sec. 11F, the RPS statute, is necessary.[3] The RPS statute was enacted in 1997 as part of a much more extensive piece of legislation that restructured the electric markets in Massachusetts. See Chapter 164 of the Acts of 1997. The RPS statute directs DOER to establish a renewable energy portfolio standard under which every retail supplier of electricity in the Commonwealth must provide a minimum percentage of its electricity sales to end-use customers from “new renewable energy-generating sources.” The RPS statute reads in full as follows:
(a) The division of energy resources, shall establish a renewable energy portfolio standard for all retail electricity suppliers selling electricity to end-use customers in the commonwealth. By December 31, 1999, the division shall determine the actual percentage of kilowatt-hours sales to end-use customers in the commonwealth which is derived from existing renewable energy-generating sources. Every retail supplier shall provide a minimum percentage kilowatt-hours sales to end-use customers in the commonwealth from new renewable energy-generating sources, according to the following *508 schedule: (i) an additional 1 percent of sales by December 31, 2003, or one calendar year from the final day of the first month in which the average cost of any renewable technology is found to be within 10 percent of the overall average spot-market price per kilowatt-hour for electricity in the commonwealth, whichever is sooner; (ii) an additional one half of 1 percent of sales every year until December 31,2009; and (iii) an additional 1 percent of sales every year thereafter until a date determined by the division of energy resources. For the purpose of this subsection, a new renewable energy-generating source is one that begins commercial operation after December 31, 1997, or that represents an increase in generating capacity after December 31, 1997, at an existing facility.
(b) For the purposes of this section, a renewable energy-generating source is one which generates electricity using any of the following: (i) solar photovoltaic or solar thermal electric energy; (ii) wind energy; (iii) ocean thermal, wave, or tidal energy; (iv) fuel cells utilizing renewable fuels; (v) landfill gas; (vi) waste-to-energy which is a component of conventional municipal solid waste plant technology in commercial use; (vii) naturally flowing water and hydroelectric; and (viii) low-emission, advanced biomass power conversion technologies, such as gasification using such biomass fuels as wood, agricultural, or food wastes, energy crops, biogas, biodiesel, or organic refuse-derived fuels; provided, however, that after December 31, 1998, the calculation of a percentage of kilowatt-hours sales to end-use customers in the commonwealth from new renewable generating sources shall exclude clauses (vi) and (vii) herein. The division may also consider any previously operational biomass facility retrofitted with advanced conversion technologies as a renewable energy-generating source. After conducting administrative proceedings, the division may add technologies or technology categories to the above list; provided, however, that the following technologies shall not be considered renewable energy supplies: coal, oil, natural gas except when used in fuel cells, and nuclear power.
An owner or operator of a generation unit must submit an application to DOER to have the unit designated as a new renewable energy-generating source. 225 CMR sec. 14.06(1). If the generating source meets the eligibility criteria, DOER will provide the owner or operator with a Statement of Qualifications or SQ. Id.
Stated perhaps too simply, eveiy electricity supplier to end-use customers in Massachusetts is required under the RPS statute to supply a certain percentage of its electric output to the regional power pool by utilizing new renewable energy sources. This is considered helpful to the environment, as well as preserving depleting fossil fuel sources of energy.
“ ‘[Renewable energy,’ is energy generated from resources ‘whose common characteristic is that they are nondepletable or are naturally replenishable but flow-limited,’ or are derived from ‘existing or emerging non-fossil fuel energy sources or technologies.’” Shea v. Boston Edison Company, 431 Mass. 251, 255 (2000).
Under regulations promulgated by DOER, 225 CMR 14.00 et seq., retail electricity suppliers must document ownership of a sufficient number of renewable energy credits (“RECs”), representing the renewable attributes of output generated by facilities eligible to participate in the RPS program. The regulatory scheme establishes a system of tradable RECs that parties can buy and sell at prices of their choosing. Generators qualify to sell RECs by obtaining an SQ from DOER. It is the market in tradable RECs that is in issue here.
Although mentioned obliquely in a footnote in Shea, supra, 431 Mass. at 257 n.7, the RPS statute has not been interpreted in any way by either of the Massachusetts appellate courts.
In support of their claim of standing to challenge Greenville’s and Boralex’s SQs, Indeck and Ridgewood make the following assertions in their Complaint, in the numbered paragraphs noted:
49. By unlawfully issuing Statements of Qualifications to Greenville and Boralex, and by threatening to do the same with other retooled stokers, DOER’s actions threaten Plaintiffs’ business positions in the REC market. MAIIA [v. Commissioner of Insurance], 373 Mass. [290,] . . . 293-94 [(1977)].
* * * * *
51. Similarly, by issuing a Statement of Qualifications to Greenville and Boralex, and by threatening to do the same for others, . . . DOER threatens Plaintiffs’ competitive position . . .
Indeck and Ridgewood further allege that the RPS program is a “regulated industry.” Complaint, para. 53. Aside from making the allegation, however, Indeck and Ridgewood do not allege any facts to support this contention. For that reason, the Court treats this allegation as an assertion of law.
The motions to dismiss are based upon a challenge to Indeck’s and Ridgewood’s standing to sue in this case.

DISCUSSION

The Supreme Judicial Court, when discussing its own duties regarding a motion to dismiss, has specifically reminded this Court that:
The standard of review for a motion to dismiss púrsuant to Rule 12(b)(6) is well settled. We take as true “ ‘the allegations of the complaint, as well as such inferences as may be drawn therefrom in the plaintiffs favor . . .’ Blank v. Chelmsford Ob/Gyn, P.C., 420 Mass. 404, 407 (1995). In evaluating the *509 allowance of a motion to dismiss, we are guided by the principle that a complaint is sufficient ‘unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.’ Nader v. Citron, 372 Mass. 96, 98 (1977), quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957).” Warner-Lambert Co. v. Execuquest Corp., 427 Mass. 46, 47 (1998). Although errors of law based on the facts alleged will not surmount a rule 12(b)(6) challenge, the plaintiffs burden is “relatively light.” Id., citing Gibbs Ford, Inc. v. United TruckLeasing Corp., 399 Mass. 8, 13 (1987). Under the “generous principles” governing our review Connerty v. Metropolitan Dist. Comm’n, 398 Mass. 140, 143 (1986), we summarize the facts alleged in the . . . complaint and in uncontested documents of record.
Marram v. Kobrick Offshore Funds, Ltd., 442 Mass. 43, 45 (2004).
Here, of course, the motions to dismiss are pursuant to Mass.R.Civ. 12(b)(1). This changes the usual approach to such motions.
[Disputed facts presented on a rule 12(b)(1) motion are not viewed in the light most favorable to the non-moving party. Instead, if the defendant makes a supported, factual challenge to subject matter jurisdiction, the court is required to address the merits of the jurisdictional claim by resolving any factual disputes between the plaintiff and the defendant ... In that process, the plaintiff bears the burden of proving jurisdictional facts to support each of the plaintiffs claims.
Wooten v. Crayton, 66 Mass.App.Ct. 187, 190 n.6 (2006).
Standing is a matter of subject matter jurisdiction. Ginther v. Commissioner of Insurance, 427 Mass. 319, 322 (1998). “A defendant may properly challenge a plaintiffs standing to raise a claim by bringing a motion to dismiss under Mass.R.Civ.P. 12(b)(1) or (6).” Id. See Doe v. The Governor, 381 Mass. 702, 705 (1980).
G.L.c. 231A, the declaratory judgment statute, “does not provide an independent statutory basis for standing.” Enos v. Secretary of Env. Affairs, 432 Mass. 132, 135 (2000). Similarly, “(wjhere a plaintiff seeks mandamus relief, ‘[t]he question of standing is one of critical significance.’ ” Perella v. Mass. Turnpike Auth., 55 Mass.App.Ct. 537, 539 (2002).
As noted above, Indeck’s and Ridgewood’s sole pleaded assertion of harm is that “DOER’s actions threaten Plaintiffs’ business positions in the REC market.” Complaint, paras. 49 and 51. The Supreme Judicial Court, however, has repeatedly held that injury from business competition is insufficient to confer standing to challenge governmental action. See, e.g., Nantucket Boat, Inc. v. Woods Hole Martha’s Vineyard & Nantucket Steamship Auth., 345 Mass. 551, 554 (1963); Springfield Hotel Ass’n v. Alcoholic Beverages Control Comm’n, 338 Mass. 699, 703 (1959); Colantuonio v. Selectmen of Belmont, 326 Mass. 778, 779 (1951).
Indeck and Ridgewood cite to Massachusetts Association of Independent Insurance Agents v. Commissioner of Insurance, 373 Mass. 290 (1977) (“MAIIA”), as their life savor on this issue. Indeed, they cite MAIIA in para. 49 of their complaint.
MAIIA involved a dismissal of a complaint for declaratory relief under G.L.c. 231A seeking to challenge the validity of a regulation by the Insurance Commissioner regarding insurance issued pursuant to a group marketing plan. The plaintiffs, claiming to be participants in a heavily regulated industry, claimed entitlement to seek relief under a regulatory scheme designed to protect them from illegal and unfair competition. The motion to dismiss in issue was based on a lack of an actual controversy and requisite standing.
The MAIIA court, in discussing the standing issue, said:
[Cjontroversy in the abstract is not sufficient to allow a plaintiff to invoke the declaratory judgment remedy . . . The plaintiff must also be one who, by virtue of a legally cognizable injury, is a person entitled to initiate judicial resolution of the controversy . . .
A party has standing when it can allege an injury within the area of concern of the statute or regulatory scheme under which the injurious action has occurred.
Normally, an injury derived from business competition is not sufficient to confer standing . . . “This rule does not apply, however, to competitors in a regulated industry . . . who are attempting to challenge governmental action threatening their competitive position.”
Id, 373 Mass. at 293.
This leads directly to whether Indeck, Ridgewood, Greenville and Boralex, with regard to the RPS statute, are in a regulated industry. Indeck and Ridgewood say so in para. 53 of their Complaint. But, as the Court stated above, they did not embellish that conclusory statement with any factual allegations to demonstrate its accuracy. Thus, that is an assertion of law open to the Court to decide.
A review of G.L.c. 25A, sec. 1 IF reveals that it is a statute designed to promote the use of renewable energy in generating power in the electric market in Massachusetts. Its focus is on establishing inducements for generators of electricity to shift at least some part of their efforts away from non-renewable energy sources. The statute does not, however, regulate competition, nor does it control pricing or the market in which electricity is generated and sold.
*510 Entities, like Indeck and Ridgewood, who may be entitled to SQs from DOER, are not, for that reason, in a regulated industry. The issuance of an SQ is not a control over competition or pricing, which is what is meant by the term “regulated industry” in determining standing. See Massachusetts Ass’n. of Cosmetology Schools, Inc. v. Board of Registration in Cosmetology, 40 Mass.App.Ct. 706, 709 (1996).
The role played by DOER under the RPS statute is that of a gatekeeper, not a regulator. Nor does the RPS statute purport to directly regulate market behavior. Once an entity is through the gate, the market in RECs is essentially and wholly unregulated.
In addition to not meeting the “regulated industry” exception, Indeck and Ridgewood have not pled any facts that demonstrate that they sustained or are threatened with any injury that falls within the area of concern of G.L.c. 25A, sec. 11F. Injury to business positions in the REC market is not enough.

ORDER

For the foregoing reasons, Defendant’s Motion to Dismiss Under Mass.R.Civ.P 12(b)(1) for Lack of Subject Matter Jurisdiction, Paper #7, and Interveners’ Motion to Dismiss Under Mass.R.Civ.P. 12(b)(1) for Lack of Subject Matter Jurisdiction, Paper #13, are each ALLOWED and a final judgment shall enter accordingly.

General background on statutes like this may be found in James W. Moeller, 15 Fordham Envtl. L. Rev. 69 (2004).